McGilvery *v.* Stackpole.

---

MCGILVERY & *al., in Equity, versus* STACKPOLE.

Where a voyage is broken up by shipwreck, the *wages* of the master terminate when the vessel and cargo pass out of his control.

For any subsequent services and expenses in securing and transmitting the funds belonging to the ·owners, he is entitled, as *agent,* to reasonable compensation.

But such *services* must be in the implied employment of the *owners,* and not merely for himself.

BILL IN EQUITY.

THE plaintiffs were the owners of seven and the defendant of one eighth of the schooner Friendship, and was also master.

McGilvery, the ship's husband, resided at San Francisco in California.  Richardson, the other plaintiff, and the defendant lived in the State of Maine, but on July 30, 1850, were at San Francisco.

On that day the schooner was fitted with stores, furniture and supplies, and sailed with a load of passengers from San Francisco for Guaymas, thence to Mazatlan for orders for some port in the Pacific, and back to San Francisco.

The captain received from McGilvery $300, to pay disbursements on account of said schooner.  The wages of masters at that time and place were three hundred dollars per month.

On August 14th, following, the Schooner was wrecked on Cape St. Lucas, without fault of the master, and the vessel and stores were subsequently sold by him for $1539,00.  In superintending and closing up this business, he was occupied until August 25th.

The captain took passage in the first vessel that came along, which happened to be bound for Panama, and from thence he went to New York and to his home in this State.

When called upon to pay to the owners the proceeds of the sale, the respondent claimed that it had all been absorbed in disbursements and expenses for the owners.

The answer set forth that with the proceeds of the sale and money paid to him by McGilvery, the respondent " made his way in the most expeditious mode in his power to New York; that a portion of his journey was through a wild and inhospitable country, at great expense and at the peril of his life; and that the residue of said journey was attended with great labor and hazard to life and health, rendered still more hazardous by having in his possession the funds aforesaid."

He claimed a fair and reasonable compensation for bringing home in safety the proceeds of the sale.

McGilvery *v.* Stackpole.

The account appended to the answer showed that the respondent paid out      $706 93
on the voyage, and charged for his own services until his arrival at New York, being 4 months and 12 days, at $300 per month,      1320 00
and paid for passage from Panama to New York,      100 00

     $2126 93

He credited the owner with amount of
     sales,      $1539 00
Money received at San Francisco,      300 00
     $1839 00

The items in controversy were the charge for passage to New York, and that for his services after the disposition of the vessel and stores at the place where the schooner was wrecked.

It was agreed by the parties, that in case a bill in equity would not lie, the plaintiffs might amend by changing their bill into an action of account; and that judgment should be entered according to the rights of the parties upon such principles of law as are recognized by the Court sitting as a court of equity.

*Crosby*, for respondent.

*W. Davis*, for plaintiffs.

HOWARD, J. — The ultimate purpose of this suit is to obtain an adjustment of accounts between the parties, as part owners of a vessel. The plaintiffs resided at San Francisco, California, and one of them, McGilvery, was the major and managing owner; and the defendant was both part owner and master. The case is submitted upon the bill, answer, and agreed statement of facts.

The vessel was fitted out at San Francisco, and sailed laden with passengers, in July, 1850, for Guyamas, on the Gulf of California, thence to Mazatlan for orders to some port on the Pacific, and back to San Francisco. Before reaching the first port of destination she was wrecked, at

Cape St. Lucas, on the coast of California. She was there sold by the master, with her apparel, furniture and supplies. His conduct in managing the vessel, and making the sale, is conceded to have been unobjectionable, and such as the emergencies demanded.

Soon afterward the defendant left with the avails of the sale for Panama, in a vessel bound for that port. Thence he crossed the Isthmus, and took passage to New York, and returned to his residence in this State. He now claims to retain the entire proceeds of the sale, which are less than the amount of his account, which was rendered as a part of his answer. This account is admitted to be correct, with the exception of an item of $100, "paid for passage from Panama to New York," and a large portion of the item for services as master, up to his arrival in New York, covering *four months and twelve days.*

The vessel was stranded and wrecked in one month after the defendant's employment as master commenced. But his wages would continue so long as he continued to render services under the contract. When the voyage was broken up, and when he could no longer act in the capacity of master, his compensation would cease.

It appears, that the master and mate staid by the wreck, and rendered important services to protect and secure the property of the owners, until it passed into other hands, by the sale and delivery, on or about the 25th of August, 1850. To that time, wages were paid to the mate by the master, with the approbation of the owners. To the same time it would be but just, that the wages of the master should be computed. If he had rendered further service, or incurred expense in securing, transporting or transmitting the funds belonging to the owners, he would for that be entitled to a just remuneration. For when the voyage is interrupted by shipwreck, or other casualty, the master of the ship becomes of necessity an agent for the owners, and all concerned, with authority to act for them, as if upon special request. But there is no evidence, in this case,

upon which he can base any claim for such services or disbursements. In going to Panama, and thence to New York, and to Maine, he was not in the employment of the owners, but was following his own bent; and though with funds belonging to them, yet not in pursuance of any obligation arising from his relation as master or joint owner, but rather, as it would seem, in avoidance of palpable duties. And so, if he encountered perils on the way, as is contended, it was not in an enterprize in which the part owners were concerned, or in the accomplishment of which they are to be affected.

We have wholly failed to perceive upon what principles of law or equity, the defendant can be entitled to the amounts charged and claimed as "paid for passage from Panama to New York," and for services after the relation and duties of master had been terminated, by events that had transpired at the place of disaster. After disallowing these sums, and deducting from the proceeds of the sales, the balance of the account of disbursements as charged, and the compensation of the master, to be computed, as before stated, and one eighth belonging to him as owner, there will remain in his hands six hundred and thirty-one dollars and eighty-one cents, belonging to the plaintiffs. For that sum, with interest from the date of the writ, as claimed, they are entitled to a decree, with costs; and it is adjudged and decreed accordingly.

SHEPLEY, C. J., and TENNEY, APPLETON and HATHAWAY, J. J., concurred.