EVERETT J. BALLOU ET AL., APPELLEES, V. JOHN
BLACK ET AL., APPELLANTS.

21  131|
35  284|

1. . Mechanics' Lien: PROCEEDINGS TO PERFECT LIEN.  Under
sec. 2 of mechanics' lien law of 1881, any person who shall fur-
nish any material to a contractor for the construction of any
building shall be entitled to a lien thereon for the amount due
him from such contractor for the same, upon filing a sworn
statement of such amount with the proper county clerk within
sixty days from the time of furnishing such material.

2. ———: ———: MATERIAL MAN.  All payments within the
sixty days by the owner of the building to the original con-
tractor will be at his own risk; and as against one furnishing
material for the construction of the building, the fact that the
original contractor is indebted to the owner will not prevent the
material man from enforcing his lien for such material against
such building and the lot on which it stands.

3. ———: CONTRACT as construed in *Ballou v. Black*, 17 Neb., 389,
adhered to.

APPEAL from the district court of Cass county.  Heard
below before MITCHELL, J.

*Allen Beeson* and *R. B. Windham*, for appellants.

*Thurston & Hall* and *A. C. Wakeley*, for appellees.

MAXWELL, CH. J.

On the 17th day of March, 1882, the plaintiffs filed pe-
tition in court below stating their cause of action to be—

"That during the several times mentioned in the bill of
items hereto attached, one William Winscit was engaged in
the business of a contractor and builder.  That on the 2d
day of September, 1881, said Winscit entered into a joint
agreement with one John Black, and the First Methodist
Episcopal Church, of Plattsmouth, who are the owners of
the building and lots upon which the building was erected,
hereinafter described, whereby in consideration of twelve
thousand one hundred dollars, to be paid said Winscit by

said Black and said church, he, the said Winscit, agreed to erect for said Black and said church certain buildings, to-wit: A block of buildings upon the following-described property, to-wit: Lots one (1) and two (2) in block thirty-six (36), in said city of Plattsmouth, county and state aforesaid, the legal title to a portion of which lots, viz: the south ninety-two (92) feet of said lots one (1) and two (2), in said block thirty-six (36), in the name of the trustees of said Methodist Episcopal Church, the said John Black owning the remaining portion of said lots, viz: the north 48 feet of said lots. That for the purpose of carrying out this agreement, and at the request of the said above owners, the said Winscit purchased of one Otis H. Ballou, a lumber dealer in the city of Omaha, certain building materials at certain times and prices, to-wit: The several items of lumber set forth in the itemized accounts hereto attached at the dates therein mentioned, for which he agreed to pay the several amounts of money charged opposite the several items, amounting in the aggregate to fourteen hundred and eighty-four and $\frac{11}{100}$ dollars, and of the value of fourteen hundred and eighty-four and $\frac{11}{100}$ dollars.

"That said Otis H. Ballou furnished to said Winscit said material at the dates therein mentioned, to be used in the construction of said buildings, and the same were so used in the construction thereof.

"That the bill of items hereto attached is a true and correct bill of the material furnished to said Winscit; that the several items of lumber therein mentioned were worth the amounts severally charged on them, and that no part of said bill has ever been paid. That the said Winscit absconded from the city of Omaha, and that according to the best of plaintiff's knowledge he is financially worthless and insolvent. That on or about the 25th day of November, 1881, the said Otis H. Ballou did, according to the statute for such cases made and provided, and before sixty days had elapsed from the furnishing of said material to said

Winscit, prepare a sworn statement of the items of material furnished said Winscit for said buildings, with the amount due him from said Winscit, together with a description of the land upon which the same were used, which said statement, verified by the affidavit of Otis H. Ballou thereto attached, was filed in the office of the county clerk of Cass county, in which said materials were furnished, and was recorded in a separate book provided by the clerk for that purpose, to-wit: Book A of Mechanics' Liens Record, and he secured a lien on the lots and buildings herein described for the full amount of his said claim, to-wit: The sum of fourteen hundred and eighty-four and $\frac{11}{100}$ dollars ($1,484.11), with interest thereon at the rate of seven per cent per annum from the 28th day of September, 1881.

"That on or about the 10th day of December, 1881, the said Otis H. Ballou did, for value received, assign, set over, and transfer his said claim and lien arising therefrom to one Moses Ballou. That on or about the 16th day of February, A. D. 1882, the said Moses Ballou did depart this life, being at his death a resident of Douglas county. That the said Moses Ballou left a last will and testament. That said last will and testament was duly proved and allowed; that said plaintiffs were severally named therein as executors thereof; that the county court of Douglas county issued letters testamentary thereon to the persons named executors therein, and that said executors accepted the trust and gave the bond required by law; that said defendants, although requested, have hitherto refused and do now refuse to pay the amount of said bill or any part thereof. The plaintiffs pray this court that an account be taken of the amount due and owing them from said defendants, at some early period to be fixed by this court, and that if said defendants do not pay the said plaintiffs the amount so ascertained to be due them, then that the said premises be sold or leased by order of the court as justice and equity may require, and so much of the proceeds thereof as may be necessary be applied to the liquidation of said plaintiff's

Ballou v. Black.

claim. That plaintiffs have judgment against the said defendants for the sum of fourteen hundred and eighty-four and $\frac{11}{100}$ dollars ($1,484.11), with interest thereon at the rate of seven per cent per annum from the 28th day of September, A.D. 1881, and for their costs. That plaintiffs have such other and further relief in the premises as they may be entitled to."

Attached to said petition as an exhibit was the account for lumber, as follows:

"William Winscit, Plattsmouth. Bought of O. H. Ballou (for John Black and M. L. White for First Methodist Episcopal Church, of Plattsmouth) lumber dealer. Office North Fifteenth street, near O. & St. Paul Depot:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Sept... | 12th | 91 | 2-14 | 24 | 5914 | | | | | |
| | | 17 | 2-14 | 22 | 869 | | | | | |
| | | 70 | 2-12 | 24 | ·3360 | | | | | |
| | | 57 | 2-12 | 22 | 2508 | 12649 | 354 | 17 | 420 | 65 |
| | | 2216 Lineal | 2-2 | | | 30 | 66 | 48 | | |
| | 14th | 9 | 2-14 | 22 | 462 | | | | | |
| | | 1 | 2-14 | 24 | 56 | | | | | |
| | | 25 | 2-12 | 22 | 1100 | | | | | |
| | | 15 | 2-12 | 24 | 720 | | | | | |
| | | 15 | 2-8 | 22 | 440 | 28 | | | | |
| | | 18 | 2-8 | 24 | 576 | 3354 | 93 | 91 | 93 | 91 |
| | 17th | 1 | 2-14 | 24 | 56 | | | | | |
| | | 9 | 2-14 | 22 | 459 | | | | | |
| | | 15 | 2-12 | 24 | 120 | | | | | |
| | | 25 | 2-12 | 22 | 1100 | | | | | |
| | | 218 | 2-8 | 24 | 6976 | 28 | | | | |
| | | 15 | 2-8 | 22 | 435 | 9746 | | | 272 | 88 |
| | 20th | 49 | 2-14 | 24 | 2744 | | | | | |
| | | 22 | 2-14 | 24 | 1130 | | | | | |
| | | 80 | 2-12 | 24 | 3840 | | | | | |
| | | 16 | 2-12 | 22 | 704 | | | | | |
| | | 2 | 2-8 | 24 | 64 | 8482 | 237 | 50 | 337 | 50 |
| | | 2 m. ft. wa 2 finish | | | | 50 | 100 | | | |
| | 28th | 744 | 1-8 2d clear | | | 50 | 37 | 20 | | |
| | | 110 | 2-8 | 24 | 3520 | 28 | 98 | 56 | | |
| | | 34 | 2-12 | 22 | 1496 | *28 | 41 | 89 | | |
| | | 33 | 2-14 | 22 | 1684 | 28 | 47 | 15 | | |
| | | 44 | 2-14 | 20 | 2068 | 25 | 50 | 70 | | |
| | | 4 | 2-14 | 24 | 128 | 28 | 3 | 58 | | |
| | | 24 | 2-12 | 24 | 1152 | 28 | 32 | 25 | | |
| | | 3 | 2-12 | 22 | 132 | 28 | 3 | 69 | | |
| | | 1472 ft. 2-2 | | | | 30 | 44 | 16 | 359 | 17 |
| | | | | | | | | | 1484 | 11 |

On the 21st day of November the defendant Church filed answer as follows:

" Admits that the said William Winscit entered into a written agreement with the said John Black and the First M. E. Church, of Plattsmouth, defendant, whereby in consideration of the sum of $12,100 to be paid. to the said Winscit by the said defendants; he, the said Winscit, was to erect for the said defendants certain buildings known as the Union Block, and situated in the city of Plattsmouth,. Cass county.

" Defendant further alleges that under the said agreement there was no joint liability created between the defendants; but the said agreement provided that estimates should be made by the architect, as the work on the buildings progressed, as to how much was due from each defendant for work and material, and neither defendant was to be responsible for the other defendant's proportion of the said estimate.

" Defendant, further answering, says that the land upon which said block of buildings are built is not owned jointly by the said defendants, but alleges that Dr. John Black holding the legal title to the north 46 feet of lots 1 and 2, in block 36, upon which his part of the said building is constructed, and this defendant having the legal title to the 44 feet of said lots immediately adjoining the said blocks on the south, upon which their part of the said Union Block is erected.

" Defendants allege that they have no interest in the buildings or that part of said Union Block constructed on the land belonging to Dr. Black, and the said Black has no interest in the building constructed on the land described as belonging to this defendant.

" Defendants further allege that they have paid the said William Winscit in full for all of the material furnished and work done by him upon said building under said contract, and that such payment was made prior to the notice

of plaintiff's claim herein, and before this defendant had knowledge of its existence.

"Defendant denies any indebtedness to the said plaintiffs in the said sum of $1484.11, as they allege, or in any part of said sum, or any sum whatever.

"Defendant denies that the said Winscit bought said bill of lumber or any part thereof of the said Otis H. Ballou, with the understanding that it was to be used in the construction of the said Union Block. Defendant denies that the said Otis H. Ballou sold said bill of lumber to the said Winscit to be used in these particular buildings, and denies that the same was used for that purpose.

"For a further answer to plaintiff's petition, defendant alleges that the said William Winscit never contracted the said account with the said Otis H. Ballou in manner and form as set forth by plaintiffs; but avers that if the said Winscit purchased material of the said Otis H. Ballou to be used in the construction of said block and did not pay for the same, it was then charged to him in one general account without regard as to what building the lumber was to be used in or where it was to be taken.

"Defendant denies that the said Otis H. Ballou had any separate account against the said Wm. Winscit for lumber sold to be used in these particular buildings; but avers that the said Winscit was an extensive building contractor, having at the date said items purport to have been charged a large number of buildings under his control as contractor, and in process of construction, for the building of which he purchased the lumber of the said Otis H. Ballou. The material he did not pay for at the time was charged to him in one general account, without regard as to what building it was to be used in. When the said Winscit made a payment to the said Otis. H. Ballou, he was given credit without regard as to who paid it to him (Winscit), or upon what purchases of lumber it should apply.

"Defendant alleges that during the months of Septem-

ber and October, 1881, that these defendants paid the said Winscit in full the amounts due him under the said contract; and defendant alleges further that on or about the 1st day of October, 1881, and since the last item is purported to have been charged in the said account, the said Winscit paid to the said Otis H. Ballou the sum of $400, and that on or about the 8th day of October, 1881, he paid the said Ballou $845, and that on or about the 16th day of October, 1881, he paid the said Otis H. Ballou $140, all of which sums should appear accredited on the the said account attached to the plaintiffs' petition, a part of all said sums having been paid to the said Winscit by these defendants on the contract price of said buildings. Defendant denies that the said Otis H. Ballou secured a mechanic's lien upon this defendant's building, or that the plaintiffs herein hold a lien thereon as alleged in their petition."

On the 21st day of November, 1882, the defendant Black filed answer as follows:

"1. Denies each and every material allegation in said petition contained so far as they relate to him, except such as are hereinafter expressly admitted to be true.

" He admits that William Winscit was a contractor and builder, and that he and the said M. E. Church are owners of lots one (1) and two (2), in block thirty-six in the city of Plattsmouth, and that he and said church entered into a written contract with said Winscit to erect a block of buildings on said lots for the sum of twelve thousand one hundred dollars ($12,100); but this defendant alleges that he is the owner in severalty of the north half of said lots only, and has no interest whatever in the south half thereof, and said church has no interest, right, claim, or title whatever to the said north half of said lots. That said block of buildings covers the whole front of said north half of said lots, and a part of the south half thereof. That the part on the north half belongs exclusively to this defendant,

and he has not and never had any interest whatever in the part on the south half. That the right, title, and interest of this defendant and said church to their said parts of said lots and buildings are, and always have been, entirely separate and distinct. That by the terms of said contract with said Winscit it was stipulated that said Winscit should erect a two-story brick building on said lots, as above stated, and furnish all the materials therefor; that this defendant by the terms of said contract was to pay him, the said Winscit, therefor the sum of seven thousand dollars ($7,000) for his part of said building, and he had no interest whatever in the contract between said church and said Winscit, and is not and never was in any way liable for the fulfillment or performance thereof; and said church has not and never had any interest whatever in this defendant's contract with said Winscit. That this defendant's part of said building is separated from that of said church by a partition wall. Wherefore defendant says that there is a misjoinder of causes of action and of parties; and he therefore prays that plaintiffs' bill be dismissed and that he have judgment for cost."

On the 4th day of December, 1882, plaintiffs filed reply to the answer of defendant church as follows:

"They deny that under the said agreement between William Winscit and John Black and this defendant there was no joint liability created between the defendants, Black and said church.

"They admit that the said agreement provided that estimates should be made by the architect, as the work on the building progressed, as to how much was due from each defendant for work done; but deny that the said agreement provided that the said estimates were to show how much was due from each defendant for material, and that neither defendant was to be responsible for the other defendant's proportion of said estimates, as this defendant alleges. That as to whether or not this defendant has no

interest in the building in that part of said Union Block constructed on the land belonging to John Black, and as to whether or not the said Black has no interest in the building constructed on the land described as belonging to the said church, these plaintiffs have no knowledge save from the allegation in said answer contained, and they therefore deny the same and leave the defendant to its proof in that behalf.

"That as to whether or not the said defendant has paid the said William Winscit in full for all the material furnished and work done by him upon said building under the said contract, and such payment was made prior to the notice of plaintiff's claim herein and before this defendant had knowledge of its existence, the plaintiffs are not informed save from the allegations in said answer, and they therefore deny the same and leave the defendant to its proof in that behalf.

"That they deny that the said lumber and building material mentioned in the petition herein as purchased of the said Otis H. Ballou by said Winscit was charged to the said Winscit in one general account, without regard as to what building the lumber was to be used in or where it was to be taken, but allege the truth and fact to be that the said lumber was sold to the said Winscit with the understanding that it was to be used in the construction of the said block at Plattsmouth, and was so consigned and was charged to said Winscit separately, and that separate and distinct items thereof were made. But they admit that said Winscit was an extensive contractor and purchased from the said Ballou lumber for the construction of his buildings. But they deny that the lumber he did not pay for at the time was charged to him in one general account, without regard as to what building it was to be used in.

"That they deny that when the said Winscit made a payment to the said Otis H. Ballou he was given credit for the same without regard as to who paid it to him (Winscit),

or upon what purchase of lumber it should apply, and allege that upon the receipt of money from the said Winscit there was an understanding in every instance as to where the said payment should apply, and who paid the same, and the payment was credited to that person by whom the payment was made. The plaintiffs admit that the said Winscit paid to the said Otis H. Ballou on or about the 1st day of October, 1881, the sum of four hundred (400) dollars, and on or about the 8th day of October, 1881, the sum of eight hundred and forty-five (845) dollars, and on or about the 15th day of October, 1881, the sum of one hundred and forty (140) dollars, but deny that all or any part of said sums should be credited upon the defendant's account, and deny that all or any part of said sums was paid to the said Winscit by these defendants; but allege the truth and fact to be that all of said sums were paid to the said Winscit by parties in the city of Omaha, for whose houses the said Otis H. Ballou had furnished lumber and material, and was then furnishing lumber and building material; that the said Winscit paid the several sums immediately or soon after receiving them to said Ballou, and directed the said Ballou to credit the several parties with the said several sums, and that said Ballou so did. Save as herein admitted to be true, the plaintiffs deny each and every allegation in said answer contained."

The reply to the answer of Black was substantially the same as that above given.

On the trial of the cause the defendants requested fifteen special findings of facts, as follows:

"1st.   What were the terms of contracts between Winscit and the owners?

"2d.   Whether O. H. Ballou, plaintiff's assignor, knew at the time he sold the lumber to Winscit, that he, Winscit, had a contract with defendants to build said 'Union Block' in Plattsmouth, and did he sell the lumber described to Winscit with the knowledge that it was to be used in said building and for that particular purpose.

"3d. To whom was the lumber charged on the 'day book,' and to whose account was it posted on the 'ledger?' When posted did Winscit have more than one ledger account, and did that account contain other charges for lumber than those mentioned as having gone into defendants' buildings? On what date does Winscit's general ledger account terminate, and does any credit appear thereon; the amount and date of their entry, the date of the charges for the lumber alleged to have gone to defendants? The date of the letter to Dr. Black demanding payment of $2,600, and if on that date O. H. Ballou, plaintiff's assignor, had any other 'ledger account' against Winscit than the general account found on pages.

"4th. Was the lumber sold on Winscit's credit and charged to him individually?

"5th. Did O. H. Ballou separate 'Winscit's general ledger account' after October 20, 1881?

"6th. Were the entries 'Gish, Driscol, Wilkins, Coggsell, Plattsmouth, etc.,' made on the 'day book' in connecnection with charges for the purpose of designating simply to what place the lumber should be delivered, or for the purpose of basing a liability against the owners of the respective buildings?

"7th. How much, if any, lumber sold by plaintiff's assignor to Wm. Winscit was used in the construction of defendant's building? Ans. $1,316.43, at the contract price.

"8th. How much money did Winscit pay Ballou on account between September 12, 1881, and October 20, 1881?

"9th. How much money did Winscit pay Ballou between September 12, 1881, and November 25, 1881?

"10th. How much did the buildings cost defendants independent of any payments they made direct to Winscit?

"11th. How much money did the M. E. Church pay direct to Winscit?

"12th.    At the time O. H. Ballou filed the lien did he have knowledge of the overcharges in the account?

"13th.    Did Winscit complete the contract according to its terms; if not, did he abandon it wrongfully, and at what stage of completion did he abandon it?    Did defendants suffer any damages by reason of Winscit quitting the work?

"14th.    At what time was the building completed, and what was the rental value of the M. E. Church part of the block for the months of January, February, and March, 1882?

"15th.    Does the contract between Winscit and defendants specifically provide against any liabilities for material until the work was completed and accepted?"

The court made special findings and rendered a decree as follows:

"1st.    That the amount of lumber and building material furnished by Otis H. Ballou to William Winscit and used in defendants' block of buildings is $1,316.43.

"2d.    That the first item of said lumber was furnished on September 12, 1881.

"3d.    That said sum of $1,316.43 is due and unpaid said plaintiffs.

"4th.    That William Winscit made no payments to O. H. Ballou upon general account, and that the application of each payment made by said Winscit was directed by Winscit and applied by Ballou as directed, and that said Winscit directed nothing to be applied on the account herein, and that nothing was paid on said account.

"5th.    That within sixty days from the delivery of said lumber for said buildings the defendants paid out on account of said building an amount greater than that found due the plaintiffs herein, and that no part of said amount so paid was paid on account of plaintiffs' claim.

"6th.    Wherefore it is considered adjudged and decreed that said plaintiffs have a mechanics' lien upon the prop-

erty in their petition described, to-wit: Lot one (1) and two (2) in block thirty-six (36) in the city of Plattsmouth, Cass county, for said sum of $1,316.43, with interest thereon at 7 per cent per annum from September 28, 1881, and that unless said sum and interest and costs of this suit be paid within twenty days from the entry hereof then that an order be issued to the sheriff of Cass county commanding him to sell said premises as upon execution and apply the proceeds thereof in payment of the amount so above found due upon the confirmation of said sale.

"7th. That said lien be satisfied and said premises be sold in the following order, to-wit: That the land of the several defendants be appraised separately, and that the north forty-eight (48) feet of said lots, one (1) and two (2) block thirty-six (36), the property of defendant John Black, be sold, and seven-twelfths (7-12) of said amount due be paid out of the proceeds thereof. That the south ninety-two feet of said lots one (1) and two (2), block thirty-six (36), the property of said Methodist Episcopal Church, defendant, be sold and five-twelfths (5-12) of the amount be paid from the proceeds thereof. And in case the proceeds arising from the sale of either of said parcels of land be insufficient to pay its said proportion of said amount so severally charged upon it, then that the other of said parcels pay such deficiency in addition to the sum severally charged upon it."

There are twelve assignments of error, as follows:

"1. The court erred in refusing to make the special findings of facts as requested by the defendants.

"2. The court erred in its first special finding of fact, 'that the amount of lumber and building material furnished by O. H. Ballou to Wm. Winscit and used in defendants' block of buildings amounted to $1,316.43.'

"3. The court erred in its third finding of fact, 'that said sum of $1,316.43 is due and unpaid said plaintiffs.'

"4th. The court erred in its fourth finding of facts,

'that Winscit made no payments to O. H. Ballou upon general account, and that the application of each payment was directed by Winscit and applied as directed, and that Winscit directed nothing to be applied on the account herein.'

" 5th. The court erred in its fifth finding of fact, 'that no part of plaintiffs' claim had been paid.'

" 6th. The court erred in finding and decreeing that plaintiff's were entitled to a mechanics' lien on lots one and two in block thirty-six, in Plattsmouth, for the sum of $1,316.43, and in ordering a sale of said property for the payment of said sum.

" 7th. The court erred in ordering the sale of the whole of said lots.

" 8. The court erred in ordering 'that in case the proceeds arising from the sale of either of said parcels of land be insufficient to pay its said proportion of said amount so severally charged upon it, then that the other of said parcels pay such deficiency in addition to the sum severally charged upon it.'

" 8 a. The findings of facts by the court are vague and uncertain.

" 8 b. The court erred in not rendering judgment against William Winscit.

" 9. The court erred in not finding the issues in favor of the defendants, and dismissing the action.

" 10. The court erred in permitting plaintiffs to introduce evidence tending to prove that the payments made by Winscit were applied as directed by him, and in refusing to give the defendants any benefit or credit for said payments.

" 11. The court erred in permitting the witness Cooper to testify as to the $500 order alleged to have been given by Driscoll, and especially as to the contents of said order, without accounting for its non-production.

" 12. The court erred in refusing to permit the defendants to show by the day books of O. H. Ballou that there

were charges for lumber during September and October, 1881, against A. W. Phelps, A. Rosenberry, and R. Stevens, and no designation of the houses in which the lumber was to be used."

It will be observed that no special objections are made to the failure of the judge to make special findings upon some of the requests made, nor does it appear that the defendants were injured by such failure, and that question need not be further considered.

A very large amount of testimony was taken in the case, which cannot be set out in this opinion. It tends to show that Mr. Ballou shipped the lumber in question to Mr. Winscit, at Plattsmouth, for use in the construction of said building, and that such lumber was received and applied to that purpose.

Mr. Latham testifies:

"I reside in Plattsmouth. Am agent for the B. & M. R. R. Co. My business is to collect for and receive freight. I kept books. I was not an agent in 1881. I was cashier and kept the cashier's books. My duties as cashier was to collect freight. This is the cash book. By refreshing my memory from the book, I have a perfect recollection of car loads of lumber being shipped from Mr. Ballou to Mr. Winscit. Four cars of lumber were received from Omaha consigned by Ballou and directed to Winscit. They were received some time in September, 1881; do not know whether the dates are correct or not; books show two cars received September 21; one September 27, and one September 30. Those are the dates I collected the freight. The lumber was turned over to Dr. Black. I think he paid the freight on it. Do not know whether he paid it all or not. Mr. Marsland was agent at that time. Dr. Black told me whatever lumber came for him to deliver it to teamster, to Winscit; he would vouch for the freight. I mean by delivery to Black that he vouched for the freight."

This is not denied. The testimony also shows that no

payments whatever had been made upon this lumber. The whole amount of the debt, therefore, was due and unpaid from Winscit. The testimony also shows that Ballou filed a mechanics' lien within the time required by law, and is entitled to enforce such lien, if valid, as against the defendants, Black and M. E. Church.

Section 2, Chap. 54, Comp. Stat., provides that "Any person or sub-contractor who shall perform any labor for, or furnish any material or machinery or fixtures for any of the purposes mentioned in the first section of this act, to the contractor or any sub-contractor who shall desire to secure a lien upon any of the structures mentioned in said section, may file a sworn statement of the amount due him or them from such contractor or sub-contractor for such labor or material, machinery or fixtures, together with a description of the land upon which the same were done or used, within sixty days from the performing of such labor or furnishing such material, machinery, or fixtures, with the county clerk of the county wherein said land is situated, and if the contractor does not pay such person or sub-contractor for the same, such sub-contractor or person shall have a lien for the amount due for such labor or material, machinery or fixtures, on such lot or lots, and the improvements thereon, from the same time and in the same manner as such original contractor, and the risk of all payments made to the original contractor shall be upon the owner until the expiration of the sixty days hereintofore specified," etc.

It will be seen that under this section any person or sub-contractor who shall perform any labor for, or furnish any material to the contractor or any sub-contractor in the erection or reparation of any building, shall be entitled to a mechanics' lien thereon for the amount due him from such contractor or subcontractor for such labor, material, etc. The lien to be claimed by filing a sworn statement of the amount due for such labor or material, etc., with the county clerk within sixty days from the performing of

such labor or the furnishing such material, and the risk of all payments made to the contractor before the expiration of the sixty days is upon the owner.

Under the Revised Statutes of 1866, pages 257 and 258, the owner was liable to sub-contractors and material men, where there was no contract between them, express or implied, only to the extent of the amount due from the owner to the contractor; in other words, he could be garnisheed for the amount owing by him to the contractor. The present statute, however, makes the owner liable for the labor and material used in the erection of the building without regard to the state of the account between himself and the contractor. · One of the objects of the statute, no doubt, was to prevent collusion between the contractor and the owner, and thus protect those from being defrauded who have performed labor or furnished material in the erection of a building. Therefore payments made to the contractor by the owner within sixty days from the time of furnishing the material for the erection of the building will not absolve such owner from liability therefor to the material man. *Foster v. Dohle,* 17 Neb., 631. *Marrener v. Paxton,* 17 Neb., 634. This disposes of the principal defense relied upon by the defendants. The proper construction of the contract set out in the petition was before this court in *Ballou v. Black,* 17 Neb., 389, and it was held that the building contracted for being a unit, and the contract for its erection containing a convenient method of apportioning its cost between the two owners, the same will be adopted by the court as a proper method of apportioning the lien against the lots upon which the building is situated. This construction was adopted by the court in rendering the decree. This disposes of all questions relating to the state of the account between the defendants and Winscit and the proper construction of the contract between them.

It is unnecessary to notice the other assignments of error as they were not prejudicial to the defendants. The decree

is the only one that should have been rendered under the testimony, and there is no material error in the record. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.