HENRY & COATSWORTH COMPANY, *Appellant*, v. EVANS *et al.*

1. **Construction of Statutes.** The words of a statute are to be taken in their ordinary, usual and natural meaning. If a law is constitutional, it is the duty of the courts merely to interpret and declare it exactly as made by the legislative department.

2. **Mechanic's Lien: SUB-CONTRACTOR.** The mechanic's lien law ( R. S. 1879, sec. 3172 *et seq.* ) gives a lien to a sub-contractor for materials furnished by him to the contractor and used in the construction of the building, notwithstanding the full contract price of the building has been paid, in good faith, by the owner to the contractor ; and such lien is not limited to the amount fixed by the contract of the owner with the original contractor. ( *Henry v. Hinds*, 18 Mo. App. 497, *overruled* ).

3. ———— : ———— : CONSTITUTION. Such construction of the mechanic's lien law is not in conflict with either the state or federal constitution.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*J. K. Cravens* for appellant.

Every person who furnishes any materials for any building, erection or improvement upon land, under any contract with the owner or proprietor thereof, or with the contractor with such owner or proprietor, to construct such building, erection or improvement, which materials are actually used in such building, erection or improvement, and who has complied with the provisions of article 1, chapter 47 of the Revised Statutes, 1879, has a lien upon such building, erection and improvement for the value

of such materials unpaid, and upon the land upon which the same may be situated, to the extent limited by section 3172. The fact that the owner may have settled with his immediate contractor, and, before notice of such claim, in good faith have paid him the contract price in full, will not defeat the right of the material-man to have such lien. R. S., secs. 3172, 3191 ; *Speilman v. Shook*, 11 Mo. 340 ; *Heamann v. Porter*, 35 Mo. 137 ; *Kuhleman v. Schule*, 35 Mo. 142 ; *Fitzgerald v. Thomas*, 61 Mo. 499–501 ; *Douglas v. Zinc Co.*, 56 Mo. 388 ; *Urin v. Shook*, 11 Mo. 142 ; *Peters v. Railroad*, 23 Mo. 107 ; *Winder v. Caldwell*, 14 How. ( U. S. ) 434.

*C. O. Tichenor* also for appellant.

(1) The legislature can pass a law so as to give a lien to one for materials furnished by him to the contractor and actually used in the building, in case the whole contract price of the building has been paid to others for labor done and material used (2) The statute in such a case gives a lien.

*Traber & Gibson* and *R. J. Ingraham* also for appellant.

(1) Section 3172, Revised Statutes, is as follows: "Every mechanic who shall do any work upon any building under any contract with the owner or his contractor shall have a lien." This language is too plain to be mistaken ; and that interpretation must be adopted which the words themselves import. *State v. Diveling*, 66 Mo. 379. The supreme court cannot go outside the language of this statute to ascertain that the legislature meant one thing when it declared another. *State ex rel. v. Gammon*, 73 Mo. 246. When an act is expressed in clear and precise terms ; when the sense is manifest and leads to nothing absurd, there can be no reason not to

adopt the sense which it naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it, is to elude it. The popular or received import of words furnishes the general rule for the interpretation of statutes. Potter's Dwarris, 143. It is the duty of all courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing. The introduction of qualifying words in the interpretation of statutes is frequently a great reproach to the law. Potter's Dwarris, 200. Words used in a statute will be construed in their plain, ordinary and usual sense, their generally accepted meaning. Sess. Acts 1885, p. 190 ; *State v. Anderson*, 84 Mo. 527.

*R. B. Middlebrook* for respondents.

(1) The facts here are identical with those in *Henry v. Hinds*, 18 Mo. App. 497. (2) It is presumed that the sub-contractor has notice of the terms of the contract between the owner and the original contractor. *Scott v. Cook*, 8 Mo. App. 193 ; *Garnett v. Berry*, 3 Mo. App. 205 ; *Henry v. Hinds*, 18 Mo. App. 497 ; *Stewart v. Wright*, 52 Iowa, 335 ; *Greenway v. Turner*, 4 Md. 296 ; *Jensen v. Brown*, 2 Col. 697–698. (3) The object of giving notice to the owner by sub-contractors is to enable the owner to withhold from the original contractor sufficient to pay the sub-contractor. *Jensen v. Brown*, 2 Col. 697–698 ; *McIntire v. Barnes*, 4 Col. 285 ; *Epley v. Scherer*, 5 Col. 536 ; *Morrison v. Hancock*, 40 Mo. 566 ; *Colter v. Frese*, 45 Ind. 96. (4) The lien of the sub-contractor and material-men is always in strict subordination to the terms of the original contract between the owner and his immediate contractor. *McIntire v. Barnes*, 4 Col. 285 ; *Garnett v. Berry*, 3 Mo. App. 205.

*Botsford & Williams* and *B. F. Deatherage* also for respondents.

( 1 ) The lien of the sub-contractor rests upon and is subordinate to the contract between the owner and the contractor. Phillips on Mechanics' Liens (2 Ed.) secs. 62, 62 *b* ; *Campbell v. Scarfe*, 1 Phil. Rep. 187 ; *Jensen v. Brown*, 2 Col. 694 ; *Prescott v. Maxwell*, 48 Ill. 84 ; *Kling v. Construction Co.*, 7 Mo. App. 410 ; *Deardorff v. Everhart*, 74 Mo. 37. ( 2 ) The lien of a sub-contractor only exists by virtue of the contract between the owner and contractor, and where there is no such contract, no lien exists in favor of any material man or subcontractor. *Roland v. Railroad*, 61 Iowa, 380 ; *Andrews v. Burdick*, 62 Iowa, 714 ; *Whittier v. Hollister*, 64 Cal. 283 ; *O'Donnell v. Kramer*, 65 Cal. 353 ; *Turner v. Strenzel*, 70 Cal. 28 ; *Wiggins v. Bridge*, 70 Cal. 437 ; *Rosecranse v. Wagner*, 62 Cal.154. ( 3 ) The mechanic's lien law, if construed to bind the owner's property in favor of a sub-contractor, where the contractor has been paid the contract price in full, due under the contract between the owner and contractor, is unconstitutional and void.

BARCLAY, J.—Plaintiff, a sub-contractor, seeks to establish as a lien a demand for materials furnished toward the erection of a building on land of defendant Dickinson.

The exact controversy presented for decision arises from the following undisputed facts : Evans was the original contractor with Dickenson for the erection of certain buildings on land of the latter. Plaintiff, under a contract with Evans, supplied materials used in their construction. Plaintiff's account therefor was not paid. Notice of the demand was served on the owner and the account filed in due time as a lien on the property in accordance with the lien law. No defect in the formal

steps taken by plaintiff is suggested, but it appears that the owner had paid the original contractor the full amount of the agreed price for the buildings before notice or knowledge of plaintiff's demand; and that the contractor had applied that amount to discharge other valid claims against the property for labor and materials furnished, reserving nothing for himself. The circuit court rendered a personal judgment for the amount of plaintiff's demand against the contractor Evans, but denied the claim for a lien against the property. After the usual steps for a review of that ruling, plaintiff brought the case here.

It is necessary to determine in this case whether payment of the full contract price, in good faith, by the owner to the contractor, in the circumstances above described, prevents the establishment of a lien against the property by a sub-contractor who has furnished materials for the erection of a building and otherwise complied with the statute.

The law of this state concerning these liens is the product of a gradual development. Its foundations were laid in our early jurisprudence (Laws of Mo. 1823–24, page 803, chapter 346) and improvements were made thereon from time to time until its present form was reached. R. S. 1879, chap. 47. It is unnecessary to give the details of its history further than to remark that its framers embodied in it some materials acquired from the statutes of other states and some of the products of their own labor, forming thus a composite structure in many respects unlike the laws elsewhere on the subject. The points of dissimilarity must be clearly borne in mind to avoid the error of applying to the interpretation of our own statute decisions of courts in other states construing language quite different.

Liens of this kind did not originate under the common law of England. They are founded on

principles of natural justice which the civil law recognized more than a thousand years ago by giving workmen and material-men a similar right of compensation ( called *privilege*, which took precedence even over prior mortgages ) against property they had improved.

The Missouri statute undertakes to define the facts which shall create such a lien and to provide a remedy for its enforcement. ·It should receive a liberal and reasonable construction to effectuate the purposes disclosed by its terms. *Dewitt v. Smith*, 63 Mo. 263. To arrive at a sound interpretation we must consider the law in all its parts, and ascertain, as best we may, and give expression to the intent of the legislature. It is our duty to give full effect to that intention when discovered, without attempting to enlarge or to restrict the legislative meaning to harmonize with any views of our own concerning its wisdom or expediency.

The first section of the law in question is as follows ( omitting the parts immaterial to this case ) : Every mechanic, or other person, who shall perform any labor upon, or furnish any materials for any building, or improvements upon land, under any contract with the owner or his contractor, upon complying with the provisions of this article, shall have for his labor done, or materials · furnished, a lien upon such building or improvements, and upon the land belonging to such owner on which the same are situated to secure the payment for such labor done or material furnished. R. S., 1879, sec. 3172.

It has been already decided that in no event can a sub-contractor assert a lien against the property for a greater amount than the reasonable market value of the labor or materials he furnished toward the erection of the building or improvement. *Deardorff v. Everhartt*, 74 Mo. 37; *Schulenburg v. Prairie Home Inst.*, 65 Mo. 295. But there is nothing in this, or in any other section expressly limiting the aggregate liens to the

amount which the owner agreed to pay the original con-
tractor for the completed work.

Yet such limitation, in definite terms, appears to
have been thought necessary by the legislatures of
other states desiring to express that purpose in their
laws. We shall mention some of those statutes to indi-
cate the differences between them and our own in this
particular.

The limitation now referred to has usually assumed
one of two forms. In some states the clause conferring
the lien is of nearly as broad scope as our own,
but the limitation is supplied by another section
to the effect that the lien notice by the sub-contractor
to the owner shall give the former a claim against, and
right to any sum "due or to become due under the con-
tract" by the owner to the contractor. Such was the
law of Colorado when the decision in *Jensen v. Brown*
(1875) 2 Col. 697, was announced. Session Laws Color-
ado, 1872, p. 150, sec. 6.

The law of Iowa was somewhat similar when
*Stewart v. Wright* (1879), 52 Iowa, 335, was decided, the
language, defining the *status* of a sub-contractor there
being as follows : "And from and after the service of
such notice, his lien therefor shall have the same force
and effect," etc., "as a lien by the contractor, but shall
be enforced against the property only to the extent of
the balance due to the contractor at the time of the ser-
vice of such notice upon the owner, his agent, or
trustee." Iowa Code, 1873, p. 386, sec. 2133.

In other states this limitation has been expressed
as a proviso in the section defining the right of lien, or
as a distinct part of the statute. Thus the law of 1851,
applicable to New York City, contained the following
as part of the sentence creating the lien : "But such
owner shall not be obliged to pay for, or on account of
such house, other building or appurtenances, in .consid-
eration of all the liens authorized by this act to be

created, any greater sum or amount than the price stipulated and agreed to be paid therefor in and by such contract," *i. e.*, the contract between the owner and original contractor. Laws of N. Y., 1851, pp. 953, 954, sec. 1.

In Illinois it was provided that no claim of any sub-contractor, etc., should be a lien "except so far as the owner may be indebted to the contractor at the time of giving such notice of such claim, or may become indebted afterward to him as such contractor." R. S., 1874, Ill., ch. 82, sec. 33.

Kansas' laws added this condition to the right of lien: "Provided that the owner shall not be liable to such sub-contractor for any greater amount than he contracted to pay the original contractor." Laws of Kansas, 1872, p. 295, sec. 2.

In Connecticut it was declared that "No such lien shall attach to any building or its appurtenances, or to the land on which the same may stand, in favor of any person, to a greater amount in the whole than the price which the owner agreed to pay for such building and its appurtenances." G. S. Conn. 1875, p. 360, sec. 12.

Such limitations, in one or another form, have been in force at different times in many states. Some of them have been changed by later laws. They are mentioned here as types of the forms that have been thought effective to limit the sub-contractor's lien to the amount due under the owner's original contract when the law-makers so intended.

The case at bar turns, of course, on the proper construction of our own law. The latter contains no such language as has been quoted from other states, nor anything substantially similar. The question then arises whether our legislature intended a like limitation to be supplied by construction. If so, the expression of that intent is singularly unfortunate and obscure when it

evidently might have been very plain. The terms of section 3172, above given, are clear and comprehensive in relation to the question before us. They contain nothing suggestive of any implied condition upon, or limitation to the right of lien therein defined.

The words of a law are to be taken in their ordinary, usual and natural meaning. When the legislature says that a mechanic or material-man " shall have a lien" (certain facts occurring), we are to assume that it means it. We certainly should not suppose that it intended thereby to say that such a lien should only exist when the owner had not already fully paid the contractor, and in no event for more than the original contract price. Such a ruling, in effect, would require more facts to be established as essential to such a lien than those mentioned by the law-makers. It is not our province to make such additions to the statute. If a law is constitutional it is our duty merely to interpret and declare it exactly as made by the legislative department on which the responsibility for its wisdom and policy rests. We cannot properly add to it a meaning not intended by its terms.

Let us now consider such parts of the context to the section already quoted as may throw light on the supposed intentions of the legislature as to its scope.

The section requiring notice by the sub-contractor, in cases like this, should perhaps be noted. It is this : " Section 3190. *Sub-contractors and others to give notice.* Every person, except the original contractor, who may wish to avail himself of the benefit of the provisions of this article, shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due."

This section noticeably omits any qualification of the language of section 3172 regarding the facts necessary to the right of lien. It is undoubtedly intended

to provide a measure of protection to the owner by warning him of such claims, so that he may retain from the original contractor, enough of the contract price to indemnify himself against loss. But the sub-contractor may file his claim for a lien ( on notice as above) at any time within four months after the indebtedness accrues. R. S. 1879, sec. 3176. It is hence evident that any payment by the owner to the contractor, before the time expires for receiving the sub-contractor's notice, will not defeat the latter's right of lien unless we are to interpolate into this section other facts not mentioned as essential by the law-makers, namely, that such notice must be given before full settlement with the original contractor, or that such notice shall only give the sub-contractor a right to claim the sum then due, or thereafter becoming due to the contractor (as is the law in some other states). This we cannot do.

The other provisions of that chapter do not enlighten the present controversy except section 3191 which is as follows : "In all cases where a lien shall be filed, under the provisions of this article, by any person other than a contractor, it shall be the duty of the contractor to defend any action brought thereupon, at his own expense ; and, during the pendency of such action, the owner may withhold from the contractor the amount of money for which such lien shall be filed ; and in case of judgment against the owner or his property, upon the lien, he shall be entitled to deduct from any amount due by him to the contractor the amount of such judgment and costs, and, if he shall have settled with the contractor in full, shall be entitled to recover back from the contractor any amount so paid by the owner for which the contractor was originally the party liable." R. S. sec. 3191.

If payment of the contract price to the original

contractor were a defense to the lien demand of a sub-contractor (as is asserted by respondents), no such "judgment against the owner or his property" could lawfully be recovered by a sub-contractor after such full settlement. Yet this section assumes that such judgment may properly be obtained and enforced. For that reason it gives the owner a right of action "to recover back from the contractor any amount so paid." Reading it in connection with section 3172 we think the conclusion irresistible that the legislature used the broad language conferring the right of lien with a full appreciation of its effect, and accordingly provided by section 3191 for some of its practical applications. We consider these two sections as excluding the inference of any legislative intent to limit the lien of subcontractors to the amount fixed by the contract of the owner with the original contractor.

But it is insisted that this construction of the law would give it an unconstitutional force and effect. We have found difficulty in dealing with this objection because of its generality. The only specific clauses of either state or federal constitution with which any clash is suggested are the federal prohibition against depriving any person of property "without due process of law" (U. S. Const. Amend. 14) and the section of the Missouri Bill of Rights securing to all "the enjoyment of the gains of their own industry." Sec. 4.

A statute like ours, creating a lien on improved property for the reasonable value of the labor and materials furnished to permanently improve it, and providing a mode for its enforcement upon adequate notice to all parties in interest, with an opportunity for a trial of every issue, in court, "as in ordinary civil actions and proceedings in circuit courts" (R. S., section 3179), certainly does not deprive the owner of such improved property thereof "without due process of

law." It is unnecessary to discuss that contention further in view of the definite rulings that have been made construing that part of the federal constitution. *Davidson v. New Orleans*, 96 U. S. 97; *Sheppard v. Steele*, 43 N. Y. 52; *State v. Addington*, 77 Mo. 110.

It is further urged that such a construction of the lien law would violate the Missouri Bill of Rights, quoted above. An argument is predicated thereon against the justice and policy of the statute. It is claimed that it abridges the right of the owner to make such contracts as he pleases and to enjoy the benefits thereof.

That hardships may occasionally result to land-owners from the application of the law to particular cases is possible. That hardships would result to others without such law is equally clear. If the owner engages a contractor to erect a house for five thousand dollars and the latter uses in the structure labor and materials worth ten thousand, obtained on credit from others, it is obvious that some one must sustain the loss occasioned by such folly or fraud. Without this statute, the loss would often fall on the sub-contractors whose labor and materials have enhanced the value of the property. Under its provisions the latter can enforce payment (from the property) for the reasonable value of their labor and materials in the building, not exceeding the prices they agreed to accept for the same. The owner can then recover of the contractor any excess he may thus be obliged to pay beyond the original contract price. A hardship to the owner will only result in event the contractor be insolvent and hence unable to respond to such recovery. In that case the legislature has seen fit to say that the loss should fall on the owner, who selected the contractor and has the benefit of the improvements, rather than upon the sub-contractors who supplied the materials and labor. It is an application to such transactions of the familiar legal principle that when one of two innocent

parties must suffer a loss by reason of the fault of a third, that loss should be borne by him who gave the third person power to commit the fault. *International Bank v. German Bank*, 71 Mo. 197. The aim seems to be to protect those whose material or labor has enhanced the value of property against the business misfortunes or possible frauds of any middle-man at whose instance they furnished the same. It is made the interest of the owner, for the protection of his property from liens, to see that all valid debts of that nature are discharged by those who incur them. The law-makers considered that, by the exercise of ordinary prudence, the owner would be in a better position to guard against loss under this law than sub-contractors would be without the law. The owner may stipulate with the contractor to defer payment until the time has passed for filing other liens, or to pay the sub-contractors himself, or he may take security or other suitable steps that circumstances may require for the protection of himself and of those whose labor and materials enter into the building upon its credit.

On the other hand, if the original contract price were the limit of the liability of the property for its improvement, no sub-contractor could be sure of securing a lien, when supplying materials or labor, without first ascertaining not only the contract price, but also the amount of all other outstanding sub-contracts. Even then he would assume the further risk of conflict with sub-contracts afterwards made by the chief contractor, which the latter might, if he saw fit, satisfy first on the contract account. Thus would difficulties and uncertainties in the operation of the law exist which we think the legislature did not intend.

The owner's liberty of action is not invaded by the statute. He need not employ an intermediary to erect his building. But if he does, the law ingrafts upon his act certain consequences. It enters into, and forms

part of his agreement so far as regards the subject-matter to which the statute relates.   By virtue of the law the contractor is invested with a power to charge the property for the reasonable value of the labor and materials supplied to it by sub-contractors. The right of lien arises from the statute which applies, by its own force, to every transaction that parties, by their voluntary action, bring within its terms. No one is deprived thereby of the "gains of his own industry." The legislative purpose is quite the contrary.   It is rather to prevent one man from enjoying, without compensation, the gains of another's industry in circumstances which the law-makers regard as imposing a duty on the former to see that the latter is paid therefor.

The principle controlling this branch of the case has been frequently recognized and approved in other jurisdictions in its application to this subject and others.   Briefly stated it is that contracts must be construed and interpreted according to existing laws when made in relation to the subject-matter of those laws within their jurisdiction. *Murray v. Brown*, 91 U. S. 266. A familiar illustration of the principle is found in the admiralty. A bottomry bond or mortgage on a vessel may be validly executed, yet the mariner's lien for subsequent wages will have priority over either, because the law to that effect is assumed to have entered into every such instrument when made. 1 Conkling's Admr. ( 2 Ed. ) 112.

·Many other illustrations are at hand but we will abbreviate the statement of them by merely citing the cases in which they appear.   *Spofford v. True*, 33 Me. 283; *Langston v. Anderson*, 69 Ga. 65; *Treusch v. Shryock*, 51 Md. 173; *Winslow v. Urquhar*, 39 Wis. 260; *Vreeland v. O' Neil*, 36 N. J. Eq. 399; *Sims v. Bradford*, 12 Lea. 434; *Atwood v. Williams*, 40 Me. 409.

In the matter before us the mechanic's lien law is assumed to be in contemplation of all parties making a

building contract. There is hence no injustice in treating them as having accepted the consequences fixed by that law.

We conclude that there is no constitutional objection to the enforcement of a lien by a sub-contractor in such a case as that at bar. The result we have reached is supported by decisions from some other states commenting on the effect of statutes like ours. *Laird v. Moonan*, 32 Minn. 358; *Ballou v. Black*, 21 Neb. 147; *Ainslie v. Kohn*, 16 Ore. 371; *Loukey v. Cook*, 15 Nev. 58: *Merritt v. Pearson*, 58 Ind. 386; *S. V. R. R. Co. v. Miller*, 80 Va. 821; *Jensen v. Brown*, 2 Col. 697 *Hill v. Witmer*, 2 Phila. 72.

We have given due consideration to the decision of the Kansas City court of appeals in *Henry v. Hinds*, 18 Mo. App. 497, wherein a different conclusion was reached. Though entertaining great respect for that court and for the able writer of that opinion, we find ourselves unable to adopt their views of the question presented by the present appeal. We believe the effect of that decision would be to introduce into the statute an implied restriction of the sub-contractor's right of lien which the legislature did not intend should be placed upon it. We, therefore, do not accept it as a precedent for the decision of this case.

The supreme court of California also has announced a different interpretation of a statute similar to our own in *Renton v. Conley* (1874), 49 Cal. 187, and earlier cases mentioned therein. That decision has been expressly disapproved in Nevada. Although the same statute had been reënacted there the supreme court declined to follow such a construction of it. *Hunter v. Truckee Lodge*, 14 Nev. 32. Since that decision was rendered, the legislature of California has made several changes in that law, the most comprehensive being found in the Acts of 1884 (extra session), p. 143.

From the nature of these amendments it appears probable that the law-makers of that state do not regard

that ruling as a correct construction of the intention they endeavored to express, with regard to this subject, in the original statute. At all events, we do not agree with the views contained in that decision. We consider them as at variance with the language and meaning of our law for reasons that have been already stated in this opinion.

It follows that the judgment of the trial court should be reversed and the cause remanded with directions to set aside the finding in favor of defendants on the issue of the lien, and thereupon to enter proper findings and a judgment on the agreed case in accordance with this opinion. With the concurrence of all the judges it is so ordered.