————o————

St. Louis and Iron Mountain Railroad, Petitioner, *vs.* Geo. B. Clark, State Auditor, Respondent.

1. *Railroads—Iron Mt. R. R.—Sale of—Unpaid balance of purchase money—Construction of statute—State interest fund.*—The Cairo & Fulton R. R. and the St. Louis & Iron Mt. R. R., were sold by the State for $900,000. At the sale $225,700 was paid, leaving a balance of $674,300 to be paid on time. By § 8 of the act of March 17th, 1868, (Sess. Acts 1868, p. 95,) it was provided that the unpaid balance of $664,300, "together with all interest that might accrue thereon,"should be appropriated to building a branch road from Pilot Knob to the Arkansas State line. *Held,* that under this act, the road last named was entitled to an appropriation of $664,300, and not $674,300. And held further, that notwithstanding that act, under the act touching State interest, etc., (W. S., 1280,) the road last named would have no claim to the interest on said unpaid balance which had been collected and applied by the State Treasurer to the State interest and sinking fund. Mandamus against the State to enforce the payment of the $10,000 or the amount of the interest paid over, would not lie.

(The road from Pilot Knob to the Arkansas State line was an extension of the St. Louis & I. M. R. R.)

St. Louis and Iron Mountain R. R. v. Clark, State Auditor.

*Petition for Mandamus.*

*Dryden & Dryden,* for Petitioner.

I. The designation of the sum of $664,300 in § 8, was merely descriptive of the fund, and was not intended to limit it; and the intention should control the letter. (44 Mo., 283.)

II. But for the act of March, 1868, undoubtedly this sum when paid in would have belonged to the State interest fund, as provided by the General Statutes; but the act of 1868 worked a repeal of the General Statutes, so far as the purchase money of the St. Louis & Iron Mountain R. R. and the Cairo & Fulton R. R. were concerned, and appropriated this fund to the building of the Arkansas branch of the St. Louis & Iron Mountain R. R.

*H. Clay Ewing, Attorney General,* for Respondent.

I. There is no room for construction of the law. (18 Ohio St., 456; 42 N. Y., 259; 44 Mo., 283; 35 Cal.,634; 54 Penn., 86 and 180; 6 Wallace, 458.)

II. The 40,458 dollars having been derived from the sale of railroads and paid into the treasury, was required by the statute, (W. S., 1281, §§ 1, 3,) to be placed in the interest fund. It was so placed, and it is now inviolable. It has long since been appropriated to the payment of interest on State bonds. There is no law by which it can be drawn from the treasury, except for the purpose of paying State railroad bonds or interest.

WAGNER, Judge, delivered the opinion of the court.

The relator prays for a mandamus to compel the State Auditor to draw his warrant for certain moneys, which, it is alleged, it is entitled to. The controversy grows out of the law confirming the railroad sale to Thomas Allen and his associates, approved March 17th, 1868. (Laws of 1868, p. 95.) The Cairo and Fulton R. R. and the St. Louis and Iron Mountain R. R. were sold by the State, the first for $350,000, and the second for $550,000, aggregating $900,000. At the close of the contracts of purchase in January, 1867, the purchasers

paid $225,700 of the purchase money, leaving a balance of $674,300 to be paid on time, as provided for in the law by which the sale was made. Thomas Allen purchased from the vendees of the State, and took upon himself the obligations of the vendees of the State, and in January 1868, paid into the State Treasury the interest on this balance for the preceding year.

The act of 1868 above referred to, was then passed, and subsequent to its passage, Allen paid into the treasury another year's interest, amounting to $40,458.

This interest was placed in the State interest fund, and has been used in the payment of the railroad indebtedness of the State.

The 8th section of the act is as follows: "It is further provided, that the unpaid balance now due, or hereafter to become due, to the State for the purchase of the St. Louis and Iron Mountain R. R., and for the purchase of the Cairo and Fulton R. R. from Mr. Allen and his associates, to the amount of six hundred and sixty-four thousand three hundred dollars, ($664,-300,) together with all interest that may accrue thereon, be and the same is hereby appropriated to the building of a railroad from Pilot Knob to the State of Arkansas; said funds to be applied as may be provided for by law."

Under the provision of law the amount of $664,300 has been drawn from the State Treasury.

And it is now contended that there was a mistake in designating that sum; that it was the intention of the Legislature to appropriate the whole of the unpaid balance of $674,300, and that the petitioner is entitled to the additional $10,000, and also the interest which was paid into the Treasury and not paid back.

The first point is certainly against the petitioner. The Legislature appropriated the unpaid balance, to the amount of $664,300, they have clearly and definitely fixed the sum, and we have no right to assume that they meant any other or different amount.

The language is plain and certain, and there is no room left for construction.

As to the second question : By the statute it is provided, that all proceeds from the sales of railroads, shall be paid into the Treasury, to the credit of the State interest fund, and this fund shall be set apart by the Treasurer, and it is pledged for the payment of the interest and the redemption of the bonds of the consolidated railroad indebtedness. (2 W. S., 1281, § 1, 3.)

The money here in controversy, proceeded from the sale of railroads, and therefore it was the duty of the Treasurer to apply it to the State interest and sinking fund. Having been so applied, the officers have no further control over it. If the petitioner is entitled to the money, the Legislature must be sought to furnish the remedy, and not the court.

It follows that the writ must be dismissed. All the Judges concurring.