STATE ex rel. ED RYAN, Appellant, v. T. C. WOOTEN et al., Respondents.

Springfield Court of Appeals, November 3, 1909.

1. **DRAMSHOP LICENSE: Mandamus: County Court to Issue License When.** The statute concerning dramshops (Revised Statutes 1899, sec. 2993) provides that when the petition for a dramshop license is signed by two-thirds of the assessed taxpaying citizens in the block and its requirements are complied with, the county court shall grant such license. This statute is mandatory · when the petition complies with the requirements. The question then resolves itself into one of legal duty that may be enforced by mandamus.

2. ———: ———: **Collateral Matters Not Reviewable.** In a proceeding by mandamus, where the direct relief sought is the issuance to relator of a dramshop license, the adjudication

State ex rel. v. Wooten.

of the validity or invalidity of a local option election is a collateral question. It is a settled rule that mandamus cannot be made the instrument for giving a court jurisdiction of litigation on collateral matters.

3. ———: ———: ———: **Finding of County Court on Number of Inhabitants in City Not Reviewable.** Where the county court in a proceeding for a local option election, after hearing the evidence, finds that a city within the county has less than twenty-five hundred inhabitants, the higher court, in a mandamus proceeding, will not review the evidence upon which the judgment of the county court was found and set aside the finding because not supported by sufficient evidence. Such finding is *res adjudicata* and cannot be attacked collaterally.

4. **LOCAL OPTION ELECTION: Will of Voters Upheld.** In a local option election the expressed will of the voters should be upheld by every reasonable intendment.

### On Rehearing.

1. **CENSUS: Definition.** A census, as provided by the statute (Revised Statutes 1899, secs. 3028 and 6300), can only mean an official enumeration of the inhabitants and a public record thereof. A census is not merely a sum total but an official list containing the names of all the inhabitants.

2. ———: **Fraudulent: Judicial Notice Not Required to be Taken, When.** A mere colorable census of a city taken on the part of the board of aldermen, without any substantial compliance with the law as to the taking of the census, and for the purpose of defeating the adoption of the local option law in such city, does not import any notice of the number of inhabitants and the courts are not required to take judicial notice of such pretended census, nor the result thereof, on the records of the city.

3. ———: ———: **Finding of the County Court Conclusive on Appellate Court on Collateral Attack.** Where the county court finds from the evidence that the pretended census of a city was fraudulent and void and not based upon any list, count or enumeration of the inhabitants of said city, such finding by the county court that there had been no legal census taken is conclusive on the appellate court on collateral attack.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Thos. Carlin* and *W. Cloud* for appellant.

(1) The motion for judgment should have been sustained. R. S. 1899, secs. 3027, 3028 and 6300. (2) The motion for new trial should have been sustained. Land Co. v. Quinn, 172 Mo. 563. (3) The court should have sustained the motion in arrest of judgment. Sturgeon v. Hampton, 88 Mo. 203. (4) When the city council determined the fact that Pierce City had over twenty-five hundred inhabitants, the courts of this State should take judicial notice of the number of inhabitants without further proof thereof. R. S. 1899, secs. 6373; State v. Dolan, 93 Mo. 467; State v. County Court, 128 Mo. 427; State ex rel. v. Mitchell, 115 S. W. 1098; State ex rel. v. Cass County, 119 S. W. 1020; Abbott's Trial Evidence (2 Ed.), 1051; State v. Wofford, 121 Mo. 61.

*Archie L. Hilpirt*, Prosecuting Attorney, *Charles L. Henson* and *W. B. Skinner* of counsel for respondents.

(1) The census must be an official enumeration of the people, and as such a public record containing not merely a sum total, but an official list of the names of all of the inhabitants, preserved in the city archives, subject to the public inspection, and unless taken in such a manner it is no census and may be attacked collaterally. City of Huntington v. Cast, 149 Ind. 250, 48 N. E. 1025; State ex rel. v. Wilder, 211 Mo. 305; State ex rel. v. Cartwright, 122 Mo. App. 257; 6 Cyc. 725; Flowers v. Smith, 214 Mo. 98. (2) Mandamus being a collateral attack on the judgment of the county court, its finding as to the population of Pierce City will not be reviewed. State ex rel. v. Burke, 121 S. W. 159; State v. Mackin, 51 Mo. App. 299; R. S. 1899, sec. 3027.

STATEMENT.—The relator, Ed. Ryan, a citizen of Peirce City, Missouri, more than ten days prior to the

first day of the March term, 1909, of the county court of Lawrence county, filed his application for a dramshop license, said dramshop to be kept on lot 1 in block 28 of the city of Peirce City, in Lawrence county, and in every respect complied with the statutory requirements as a dramshop-keeper. His application was refused on the ground that the county court had made an order for the submission of the question of the adoption of local option under article 3, chapter 22, of the Revised Statutes of 1899.

Whereupon, the relator filed his petition for mandamus in the circuit court of Lawrence county, praying that said court direct the county court to issue him a license as a dramshop-keeper, or show cause for such refusal. An alternative writ of mandamus was issued. In due time, the respondents, T. C. Wooten, John J. Holt and James Doyle, justices of the county court of Lawrence county, filed their return to the alternative writ in which they admitted that the said Ed. Ryan, relator, at the time of filing his petition for a license as a dramshop-keeper, possessed all the statutory requirements, and that his petition was in conformity with the requirements of the dramshop law, but that his petition had been denied on the ground that proceedings were pending for a vote under the Local Option Law. The return further stated that on the 6th day of January, 1909, a petition in due form, signed by one-tenth of the qualified voters of said county who resided outside the corporate limits of the city of Aurora, had been presented to the county court, asking said court to order a special election to be held in Lawrence county to determine whether spirituous and intoxicating liquors, including wine and beer, should be sold outside the corporate limits of the city of Aurora. The return further stated that on the 9th day of January, 1909, after an examination, the county court granted the prayer of the petitioners, ordered a special election to be held for the purpose of determining whether in-

toxicants should be sold in Lawrence county, and fixed
the date of the election and form of tickets, in com-
pliance with article 3, chapter 22, R. S. 1899. It fur-
ther appeared from the return that notice of such elec-
tion was duly published in the papers designated in
the order; that in due time the votes were canvassed,
a majority of the votes cast being against the sale of
intoxicating liquors, and the result of the election was
duly certified.

There is no contention in this case that the notice
of the local option election was not in conformity with
the statute, nor is there any objection made by the re-
lator to any of the proceedings of the county court, or
as to their regularity, in any way, except he contends
that Peirce City was an incorporated city within said
county at the time the petition for a special election
was filed, and thereafter, that it then had a population
of more than twenty-five hundred inhabitants, and that
the voters in said city were, under the orders of the
county court, entitled to vote at such local option elec-
tion.

It further appears from the return of the respond-
ents to the alternative writ that at the time the petition
for said local option election was pending and its suf-
ficiency was under consideration by the county court,
the question arose before the county court as to whether
Peirce City had a population of more than twenty-five
hundred inhabitants; that as to such question, a hear-
ing was had, and the court heard testimony offered by
both sides as to the population of Peirce City. Among
other evidence considered, was a census of Peirce City,
purporting to have been officially taken under order of
its board of aldermen, for the year 1904, and another
for the year 1907, each tending to show a population
of more than twenty-five hundred inhabitants.

The county court, after hearing all the testimony,
upon consideration of the question, found that the city

of Aurora was the only town or city within said Lawrence county having a population of more than twenty-five hundred inhabitants, and that the pretended censuses of the said city for 1904 and 1907 were each false, fraudulent and void, and that the pretended returns and results of each of said censuses were not based upon a list, count or enumeration of the inhabitants of the said city of Peirce City. Whereupon, the county court proceeded to order a special election under the Local Option Law as hereinbefore stated.

The relator filed a motion for a peremptory writ and for judgment on the return. This motion was by the circuit court overruled, the alternative writ was quashed, and judgment entered that relator's bill be dismissed.

In due time, the relator filed his motion for a new trial in which he set up that the county court had no authority to declare that the said city of Peirce City did not have twenty-five hundred inhabitants at the time the order was made for holding the local option election. This motion was overruled and he has perfected his appeal to this court.

## OPINION.

NIXON, P. J. (after stating the facts).—The statute concerning dramshops (R. S. 1899, sec. 2993) provides that when the petition for a dramshop license is signed by two-thirds of the assessed taxpaying citizens in the block, and its requirements are complied with, the county court shall grant such license. This statute is mandatory when the petitioner complies with the requirements. The question then resolves itself into one of legal duty that may be enforced by mandamus. [State ex rel. v. Turner, 210 Mo. 77, 107 S. W. 1064; State ex rel. v. Meyers, 80 Mo. 601; Bean v. County Court, 33 Mo. App. 635; State ex rel. v. McCammon, 111 Mo. App. 626; Harlan v. State (Ala.), 33 So. 858.]

In this case, it is conceded that all the requirements of the statute were complied with by the relator, and the sole question remaining for our decision is as to the validity of the local option election, the only ground upon which said election is assailed being that Peirce City was, at the time the petition for the election was filed, a city in Lawrence county with a population of more than twenty-five hundred inhabitants, and that under the orders made by the county court, the voters residing in such city were authorized to vote on the question of the sale of intoxicating liquors. Section 3027 of the Revised Statutes of 1899 contains the following language:

"Provided, that at an election ordered under the provisions of this section, no one shall be entitled to vote who is a resident of any incorporated town having a population of twenty-five hundred inhabitants or more."

This proceeding by mandamus was an indirect attempt to contest the validity of the local option election. The adjudication of the validity or invalidity of such an election is a collateral question to the direct relief sought—namely, the issuance to relator of a dramshop license. The relator's right to such license depends upon the adjudication of the collateral question as to whether the city of Peirce City at the time the petition for the election was presented had a population of twenty-five hundred inhabitants or more.

The county court, at the time the petition was presented to them asking for a special election, heard the evidence on both sides and found "that the city of Aurora was the only town or city within said county having a population of twenty-five hundred inhabitants or more, and that the city of Peirce City was a city within said county having a population of less than twenty-five hundred inhabitants." We cannot, in the present indirect attack on that finding, review the evidence upon which the judgment of the county court was

founded and set aside their finding because not supported by sufficient evidence.

It is a settled rule that mandamus cannot be made the instrument for giving a court jurisdiction of litigation on collateral matters. [State ex rel. v. Martin (Fla.), 46 So. l. c. 426; Underwood v. Commissioners (Conn.), 35 Atl. 274; Kennon v. Blackburn (Ky.), 104 S. W. 968; Hammond v. Darlington, 109 Mo. App. l. c. 345; 2 Spelling on Injunctions and Other Extra. Rem. (2 Ed.), sections 1386-1440; High's Extra. Leg. Rem. (3 Ed.), section 198.]

The finding of the county court that one-tenth of the qualified voters signed the petition and that Peirce City was a city with a population of less than twenty-five hundred inhabitants is *res adjudicata,* and such finding cannot be attacked in the present collateral proceeding. [State v. Rinke (Mo. App.), 121 S. W. 159; State v. Searcy, 39 Mo. App. 393; State v. Dugan, 110 Mo. 138, 19 S. W. 195; State v. McCord, 207 Mo. 519, 106 S. W. 27, 123 Am. St. Rep. 410.] "Whether the vote was legally taken or not is entirely collateral." [People v. Hamilton, 58 N. Y. Supp. 959.]

The total vote in Lawrence county at the local option election was 2686 votes against the sale, and 1005 votes for the sale of intoxicating liquors, a majority against the sale of 1601 votes. This decision against the sale of intoxicating liquors "should be upheld by every reasonable intendment." [People v. Hamilton, supra.]

From the foregoing examination of this case, it clearly appears that the law has given us its mandate to uphold and maintain and not invalidate the expressed will of the electors of Lawrence county at the local option election.

The order of the trial court overruling relator's motion for judgment and quashing the alternative writ and dismissing his bill is hereby affirmed. All concur.

## ON PETITION FOR REHEARING.

NIXON, P. J.—In this case, appellant has filed a petition for rehearing and has argued the same with great ardor and insistence.

Upon reconsideration, we are unable to shut our eyes to the fact that one of the enumerators who took the census in question in the city of Peirce City was prosecuted for a misdemeanor under section 6300 of the Revised Statutes of 1899 for willfully falsifying the returns of such census; that he pleaded guilty to the criminal charge, and at the present term of this court the judgment of conviction was affirmed.

Aside from any question of fraud in the taking of this so-called census, the argument of appellant's counsel proceeds upon false premises in that he assumes in this case that the county court of Lawrence county and all other courts were required to take judicial notice of the taking of the census in question and the entry of the result on the records of the city. The paramount question is—was there a census taken such as is contemplated by the statutes under section 3028 and section 6300? A mere colorable proceeding on the part of the board of aldermen without any substantial compliance with the law as to the taking of such census for the purpose of defeating the adoption of the Local Option Law in the city of Peirce City would not import any notice of the number of the inhabitants of the city of Peirce City.

A question arose for consideration before the county court of Lawrence county at the time the petition for the local option election was filed, whether any census, in the legal acceptation of that term had in fact been taken in the city of Peirce City; that is, whether any enumeration was made that could be called a "census" within the meaning of sections 3028 and 6300 of the Revised Statutes of 1899. The "census," as provided for by these sections of the statutes, can only mean an

official enumeration of the inhabitants and a public record thereof. "A census is an official enumeration of the inhabitants with details of sex, age, family, etc." [6 Cyclopedia of Law and Procedure, 725.] A census of the city of Peirce City would be an official enrollment of the inhabitants of said city. Such an enrollment or registration of the people when taken would become a public document to be preserved in the archives of the city where it might be subject to the inspection of all those who were interested. *"A census is not merely a sum-total, but an official list containing the names of all the inhabitants."* [City of Huntington v. Cast, 149 Ind. 250, 48 N. E. 1025.] At the time the petition for the local option election was presented to the county court of Lawrence county, they were required to determine as to whether there had been any census taken of the inhabitants of the city of Peirce City—such as in contemplation of law would constitute a census. The result of their investigation is stated in the following finding and order: "The court, after hearing all the evidence offered, finds that the pretended censuses of the city of Peirce City were false, fraudulent and void, and *not based upon any list, count or enumeration* of the inhabitants of the city of Peirce City." Such finding by the county court that there had been no legal census taken is conclusive on an appellate court on a collateral attack.

The petition for rehearing is accordingly denied. All concur.