STATE OF MISSOURI, Respondent, v. ERNEST JAEGER, Appellant.

Springfield Court of Appeals, June 12, 1911.

1. CRIMINAL LAW: Information: Inconsistent Counts: Local Option Law Violations. Where an information charges the defendant in three counts, with violating the Local Option Law and in the fourth count thereof with violation of the Dramshop Act, all under one verification, it was *held* that there was no such contradiction in the counts as would render their verification under one oath inconsistent.

2. ————: Local Option Law Violations: Venue: Failure to Prove Venue. In a prosecution for violating the Local Option Law the information alleged and the proof showed that the Local Option

State v. Jaeger.

Law was in force in Newton county outside of the city of Neosho. The only proof of venue was from one witness who testified that he bought the liquor, on the day named, of the defendant in Newton county. *Held,* insufficient to prove venue for it did not appear whether the sale was made within or without the limits of the operation of the law.

3. **LOCAL OPTION ELECTIONS: Cities of Twenty-five Hundred Inhabitants: Taking Census Subsequent to Order for Election: Jurisdiction of County Court.** The county court of Newton county, upon a proper petition, ordered a local option election, and thirty days subsequent to the order of the election, the city of Granby, which prior thereto had not been recognized as a city with twenty-five hundred inhabitants, caused a census of its inhabitants to be taken and filed a proper statutory certificate thereof with the clerk of the county court four days before the local option election, showing that said city had over twenty-five hundred inhabitants. *Held,* that this did not in any way affect the validity of the local option election nor oust the county court of jurisdiction.

4. ———: ———: ———: **Collateral Attack: Criminal Law.** In a prosecution for violating the Local Option Law it is evident from a reading of the statutes that the Legislature intended that the date the county court made the order for holding the election should fix the time for determining the legal status of the cities in the counties with reference to the number of inhabitants and that a census taken subsequent to the order calling the election and a statutory certificate thereof filed with the county clerk prior to the day of the election, will not affect the legality of such election. NIXON, P. J., concurring in a separate opinion assigns the further reason that the local option election cannot be collaterally attacked.

5. ———: **Power of Legislature: Fixing Date of Determining Legal Status.** It is competent for the Legislature to fix the qualifications of voters at any election as of any day it sees fit and it is also competent for the Legislature to fix the date the election was ordered, as the time when it should be ascertained what territory is to be affected by the result of the election when held.

6. ———: **Presenting Petition: Jurisdiction of County Court: Collateral Attack.** Presentation of the proper petition for a local option election gives the county court jurisdiction of the subject matter and the validity of its proceedings thereafter, with respect thereto, is not subject to collateral attack. (Concurring opinion of NIXON, P. J.)

7. **COLLATERAL ATTACK: Definition.** A collateral attack is defined as one in which the invalidity of proceedings or of a judgment of a court is predicated upon matter de hors the record,

State v. Jaeger.

and any proceedings must be regarded as a collateral attack which is not instituted for the express purpose of annulling, correcting or modifying the judgment. (Concurring opinion of NIXON, P. J.)

8. **JURISICTION: Collateral Attack.** When jurisdiction has once attached, everything done within that jurisdiction, however irregular or erroneous, is immune against collateral attack. The power to decide right includes the power to decide wrong and the decision is as binding in the one case as in the other against collateral attack. (Concurring opinion of NIXON, P. J.)

9. ———: **Effect of Subsequent Events on Jurisdiction.** When the jurisdiction of a court is exclusive and has once lawfully attached, it cannot be ousted by subsequent events or facts arising in the case, but the court may proceed to find judgment unless some constitutional statute operates to divest that particular court of its jurisdiction. (Concurring opinion of NIXON, P. J.)

10. **STATUTORY CONSTRUCTION: Public Policy.** Where the language of the statute is unambiguous, the courts have no authority on the grounds of any supposed public policy to amend or add to the law by construction. (Concurring opinion of NIXON, P. J.)

Appeal from Newton Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*M. E. Benton* and *John T. Sturgis* for appellant.

(1) The evidence in this case clearly shows that the city of Granby had a population of over 2500 at the time of holding the local option election for Newton county, and yet that city was included and voted on the question along with the county. This would render the election void. State v. Webb, 49 Mo. App. 407; State v. Mitchell, 115 S. W. 1098; State ex rel. v. Cass County, 137 Mo. App. 698. (2) The state did not prove the venue of the alleged sale. The evidence goes no further than to prove that the sale was within Newton county, but wholly fails to show that it was outside the limits of the city of Neosho. The venue of the offense is within the county and without the city and it is just as essential to prove that the sale was outside the limits of the city as inside the county. State v. Prather, 41 Mo. App. 451. (3) It is elementary law that a failure to prove

the venue is fatal to the prosecution. State v. Hottle, 104 Mo. App. 34; State v. King, 111 Mo. 576; State v. Schuerman, 70 Mo. App. 518; State v. Hartnett, 75 Mo. 251. (4) The indictment in this case is bad. It contains two inconsistent and repugnant counts, the one for selling intoxicants in violation of the Local Option Law, and the other in violation of the Dramshop Law. Both laws cannot be in force at the same time in the same county. The proof of the one offense necessarily disproves the other, and in fact the proof of one is a defense to the other. State v. Beam, 51 Mo. App. 368; Ex parte Handler, 176 Mo. 383; Butler v. State, 25 Fla. 347.

*Thomas M. Saxton* for respondent.

MANN, Special Judge.—From a conviction for violation of the Local Option Law in the circuit court of Newton county defendant appealed to the St. Louis Court of Appeals, and the opinion was there rendered affirming the judgment. A motion for rehearing was filed and sustained. While the cause was pending in the St. Louis Court of Appeals upon rehearing, this court was created, and the cause transferred to this jurisdiction. Cox, J., being disqualified to sit, E. P. MANN was elected to sit in the case as special judge.

Appellant's first contention is that since he was charged in three counts of the information with violation of the Local Option Law, and in the fourth count thereof with violation of the Dramshop Act, all under one verification, the counts are so inconsistent and contradictory that the verification amounts to no verification in fact, and that his motion in arrest, upon the authority of State v. Weyland, 126 Mo. App. 723, 105 S. W. 660, should have been sustained.

In the Weyland case there were three counts in the information under one verification. The first count charged that defendant was a dramshop keeper, and that he sold liquor on Sunday. Another count charged that he sold liquor on Sunday, saying nothing about his being a dramshop keeper. The other count charged that

he was not a dramshop keeper, and that he sold liquor on Sunday. The court held that the two counts expressly charging in the one that defendant was a dramshop keeper and in the other that he was not a dramshop keeper, were so flatly contradictory of each other that the truth of both could not consistently be verified under one general affidavit. It did not hold that the remaining count was improperly verified with either of the others under one oath. If it had so held the case would have been in point here, or had the prosecuting attorney charged in one count of the information under consideration that the Local Option Law was in force in Newton county, and in either of the others that it was not in force in such county, the case cited would have been in point. As the case stands, we find no such contradiction in the counts of this information as renders their verification under one oath inconsistent.

Appellant's contention that no proof of venue was offered or made by the state is correct. Only one witness testified to the sale, and he merely said that he bought wine on the day named of the defendant, in Newton county, Missouri, and paid for it.

The information alleges and the proof shows that local option was in force in Newton county outside of the city of Neosho, which had a population of over twenty-five hundred. The state entirely failed to prove, even inferentially, whether the sale was made within or without the limits of the operation of the law, and for this failure alone the cause must be reversed and remanded for a new trial.

Appellant further contends, however, that the undisputed record in this cause disclosed affirmatively the fact that the Local Option Law was never adopted in any part of Newton county, and therefore he cannot be convicted of its violation. It is necessary to dispose of that question here now. Touching appellant's contention in this behalf, it is not necessary to go into every detail further than to say that at the trial the state offered no proof of the publication of the notice of the

local option election, but it did offer the record evidence, unchallenged as to its sufficiency or competency, to show that on May 2, 1904, a proper petition was filed with the county court for the election, and that on said May 2nd, by record entry, the court made all the necessary findings, including a proper finding that Neosho alone was the only city *on that date* in the county having a population of over twenty-five hundred, and ordered an election for all that part of the county outside the corporate limits of said city to be held June 8, 1904; that the election was held in conformity with the order, returns properly cast up by the county court, showing that all of the county outside of the corporate limits of Neosho, including the fourth-class city of Granby, had participated in said election, and that local option had carried by a majority of one hundred and forty-six votes, and showing due publication of the result thereof. In fact, appellant admits that local option was, or would have been lawfully adopted in said county on said June 8, 1904, but for the further following facts shown by the defendant by competent evidence at the trial. We might put it this way: That the record in this case contains an agreement that on June 3, 1904, thirty days subsequent to the order of the election by the county court, the city of Granby properly caused a census of its inhabitants to be taken under the provisions of section 3028, Revised Statutes 1899 (now section 7239, R. S. 1909), and filed a proper statutory certificate thereof with the clerk of the county court on June 4, 1904, four days *before* the election, showing that said city of Granby had, according to said census, which is not attacked in any way, two thousand, five hundred and fifty-seven inhabitants.

Said census was also taken in conformity with the provisions of section 6300, Revised Statutes 1899 (now section 9639, R. S. 1909), which section requires all courts to take judicial notice of the population so shown by said census. Appellant contends that the case stated brings the facts and the law squarely within the term of State v. Mitchell (St. Louis Court of Appeals) 115 S. W.

1098, never officially reported, and State ex rel. v. Cass County, 137 Mo. App. 698, 119 S. W. 1010 (Kansas City Court of Appeals) ; that the facts in the three cases are identical, and that upon the authority of the two cases mentioned the taking and filing of the census by the city of Granby *after the date the election was ordered and before the day of election* ousted the county court of jurisdiction to proceed with the election, receive and cast up the returns, and publish and declare that local option had carried within the territory inclusive of the corporate limits of the city of Granby, because the county court was bound to take judicial knowledge of the census of said city filed with the clerk four days prior to said election, and that the census showed the city, having *then* over twenty-five hundred inhabitants, could not be controlled in the premises by another than the vote of its own inhabitants. Appellant also contends that as the whole township of Granby outside as well as inside the city limits thereof voted at the same precinct, it could not then, and cannot now, be determined whether the proposition carried by excluding the vote of those residing within the city limits, and the whole election fails. If I felt that the two cases cited correctly declare the law, there would be nothing to do but to sustain appellant's contention, hold that local option had never been legally adopted in Newton county, and reverse this case outright. Both the Mitchell case, and the Cass county case assume as the premise for all the deduction therein that a local option election under the statute is held for the purpose of determining whether intoxicating liquors shall be sold in all that portion of the county outside of the cities thereof having a legally ascertained population of over twenty-five hundred *on the day of election.* If I believed the statute intended that the legally ascertained population on the day of the election, or any day subsequent to the day the election was ordered, governed, then I would concede the reasoning and conclusions reached in these two cases to be sound. In my judgment, however, the opinion in each

of those cases overlooks the plain provision, or at least meaning and intent of the Local Option Law, article III, chapter 22, Revised Statutes 1899, in force when these elections were all held (now article III, chapter 63, R. S. 1909) which when we consider all the sections thereof together, in order that if possible all may stand, plainly provides for a local option election to be held for the purpose of ascertaining whether intoxicating liquors shall be sold in all that portion of the county outside the corporate limits of any city thereof whose population has been legally ascertained by the county court to be over twenty-five hundred *at the date of such order of election,* and that if at the date of the order of election by the legal standard of determination any city of the county has less than twenty-five hundred inhabitants, then no matter how many inhabitants it may have by such legal standards of determination on the day of the election it remains included in the order, is entitled to participate in the election, and is bound by the result thereof. This plain intent of the statutes in question is first evinced in section 3027, Revised Statutes 1899 (now section 7238, R. S. 1909), which provides for the calling of an election "upon application by petition signed by one-tenth of the qualified voters of any county who shall reside outside of the corporate limits of any city or town having *at the time of such petition* a population of twenty-five hundred inhabitants or more." The Michell case announces the doctrine that if subsequent to the order of election, and prior to the day of election a city theretofore having less than twenty-five hundred inhabitants files its census report, as provided by law, with the county clerk, showing more than that number, such city must be excluded from the operation of the law until such time as it votes for itself upon the proposition, but that nevertheless if by excluding the vote of such city from the returns the count shows the adoption of the Local Option Law, it was properly declared carried in the territory outside of such city. If this be correct, what then becomes of the fact that at the time

of filing the petition, and ordering the election, the voters of such city were competent petitioners and were necessarily counted in determining whether the necessary one-tenth had petitioned for the election? The ascertaining of this fact is jurisdictional. With such a city in the count when the petition is considered by the court, and out of the count when the election is held, and out of the territory to be affected by the election, how can it be determined whether the necessary number have petitioned for the election who were legal voters in the territory over which the law, if adopted, would be permitted to operate? Then, too, we have the anomalous condition of permitting an election to be ordered and held upon the petition of voters residing in a territory over which the election can have no force and effect, which condition the Legislature clearly never intended should exist, because by the section named it expressly excludes those residing in that part of the county not to be affected from the right of petition, and properly so. But the intention of the Legislature is more clearly evinced by the provisions of section 3032, Revised Statutes 1899 (now section 7243, R. S. 1909), a section of the Local Option Law not noticed in either the Mitchell or the Cass county case. This section is as follows:

"If a majority of the votes cast at any election held under the provisions of this article shall be 'against the sale of intoxicating liquors,' it shall not be lawful for any person within the limits of such county (lying outside of the corporate limits of any city or town *having at the date of said order of election* a population of twenty-five hundred inhabitants or more) or city, as the case may be, to directly or indirectly sell, give away or barter in any manner whatever, any kind of intoxicating liquors or beverage containing alcohol, in any quantity whatever, under the penalties hereinafter prescribed."

I think this is an express declaration that the election authorized by the Local Option Law is to be held for the purpose of determining whether intoxicating liquors shall be sold in that part of the county outside of the

corporate limits of any town or city having a population of twenty-five hundred or more *on the date of the order,* according to the legal standard of determination at that date. And that since it is not contended, but the record shows, that on May 2nd, when the petition was filed with the county court of Newton county and the order for the election entered of record, the city of Granby, according to the legal standard of determination, had on that date less than twenty-five hundred inhabitants, it properly participated in said election and local option was legally adopted in all of the county, including the said city of Granby, save alone the city of Neosho, having a population, according to the order and to the date thereof, of over twenty-five hundred. The census taken and filed after the date of the order did not in any manner affect the status fixed by the order.

It has been suggested that the fact that the Legislature fixed the qualifications of voters at local option elections as of the day of election is indicative of the legislative intent that the day of election and not the day the election is ordered governs the status of the territory to be affected. I do not think so. It is true that the Legislature has fixed the qualifications of voters as of the day of election. In doing so it simply followed the usual rule. It is competent for the Legislature to fix the qualifications of voters at any election as of any day it sees fit. So also it was competent for the Legislature to fix the day the election was ordered as the time when it should be ascertained what territory is to be affected by the result of the election when held, and this it seems to me it certainly did by the section of the statute last quoted.

Whether or not the city of Granby, after filing its census showing over twenty-five hundred inhabitants, could have called an election later, within the four years, and voted itself out of the operation of the law is not involved here, and not necessary for us to decide.

157 App.—22

The judgment is, therefore, reversed, and the cause is remanded for failure of the state to prove the venue.

This opinion being in conflict with State ex rel. v. Mitchell, 115 S. W. 1098, decided by the St. Louis Court of Appeals, and State ex rel. v. Cass County, 137 Mo. App. 698, 119 S. W. 1010, decided by the Kansas City Court of Appeals, this cause is hereby certified to the Supreme Court, in accordance with the mandate of the Constitution. *Gray, J.,* concurs in result. *Nixon, P. J.,* concurs in separate opinion.

### SEPARATE CONCURRING OPINION.

NIXON, P. J.—Questions in addition to those passed upon by my Brother Mann in his opinion are, I think, presented by appellant and are properly within the record and for consideration. While I am entirely in accord with the conclusions reached in the opinion of the learned Special Judge, I find additional grounds for concurring in the result which he has reached, and which I deem it important to be stated in this case.

The defendant at the trial offered in evidence by way of his defense a census properly taken by the city of Granby in Newton county. The petition for an election under the local option law was presented to the county court of Newton county and an election ordered on May 2, 1904. The census was taken by the city of Granby on June 3, 1904, showing a population of 2557 inhabitants. On June 8, 1904, the result of the local option election in the county was properly canvassed and the entry was made that such canvass showed that local option had carried in said county by a majority of 146 votes. The county court ordered the result to be spread upon the records and caused due publication to be made of the result thereof, and no question is raised in this case but what the proceedings in calling the local option election, canvassing and publishing the result, and all other proceedings in regard to such matter, were in strict conformity to the statute in such cases, unless they were

rendered void by the taking of the census in the city of Granby.

The only force of this evidence and the only purpose for which the Granby census was offered by defendant was a collateral attack on the proceedings of the county court in regard to a subject-matter over which the statute had given the county court exclusive jurisdiction, and upon the state's objection to the introduction of such census as being irrelevant and immaterial the court should have excluded it. Presentation of a proper petition for a local option election gave the county court of Newton county jurisdiction of the subject-matter. [State v. McCord, 207 Mo. 519, 106 S. W. 27; Daubie v. Ossman, 142 Mo. l. c. 505, 54 S. W. 338; State ex rel. Brown v. Wilson, 216 Mo. 215, 115 S. W. 549; Halter v. Leonard, 223 Mo. 286, 122 S. W. 706.] A collateral attack is defined as one in which the invalidity of proceedings or of a judgment of a court is predicated upon matters dehors the record. [Meinert v. Harder (Or.) 65 Pac. l. c. 1058; City of Greensburg v. Zoller (Ind.), 60 N. E. l. c. 1008, and cases cited.] Any proceeding must be regarded as a collateral attack which is not instituted for the express purpose of annulling, correcting, or modifying the judgment. [Johnson v. Stebbins-Thompson Realty Co., 167 Mo. 325, 66 S. W. 933.]

There are two provisions in our statutes as to the taking of a census. Section 7239, Revised Statutes 1909, provides, "that for the purpose of determining the fact of whether or not any town shall be governed by the provisions of this section, such body having legislative functions therein may, under an ordinance thereof, take a census of the inhabitants of such town, and the result of such census shall be entered upon the journals and records thereof, and such entry, or a certified copy theerof, shall be proof of such fact, and shall be filed with the clerk of the county court of the county in which such town is situated." A compliance with the terms of this section and the entry of the result of such census upon the journals or records of the town taking the

same makes the result of the census proof of the number of inhabitants of such town. The other section—9639, Revised Statutes 1909—appears in the article on "Cities and Towns Under Special Charters." It was not enacted for or made specially applicable to any purpose connected with the local option law; nor was it enacted to enable any such town to determine whether it had such a population as would entitle it to determine for itself whether intoxicating liquors should be sold therein. It does apply, however, to cities of the fourth class and provides that upon taking such census as therein provided "all courts of this state shall take judicial notice of the population of such city or town." It is therefore clear from its express terms that the census taken in compliance with the statute and by force thereof imparts notice to all courts of the number of inhabitants therein, but neither by its terms express or implied does it require any action shall be taken by the courts by reason of such notice. It bound the courts to take notice, but attached no consequences to failure to take such notice; it was evidence which a court should regard but which it might disregard; but to say what the statute does not say, that such notice rendered void any subsequent acts of a county or other court in a matter over which they had already acquired jurisdiction prior to the census is, in my opinion, not only a flagrant non sequitur, but is subversive of fundamental legal principles: It is in effect to write into the statute what the Legislature has not enacted. When jurisdiction has once attached, everything done within that jurisdiction, however irregular or erroneous, is immune against collateral attack. The power to decide right includes the power to decide wrong, and the decision is as binding in the one case as in the other against collateral attack. [State v. Wear, 145 Mo. 162, 46 S. W. 1099; Bedford v. Sykes, 168 Mo. 8, 67 Mo. 569; Chouteau v. Gibson, 76 Mo. 38.] The language of the statute is unambiguous, and in such cases courts have no authority on the ground

of any supposed public policy to amend or add to the law by construction, and to do so is to take upon themselves the exercise of legislative powers. [Kehr v. Columbia, 136 Mo. App. l. c. 329, 116 S. W. 428; St. Louis & Iron Mountain R. Co. v. Clark, 53 Mo. 214; Hyatt v. Taylor, 42 N. Y. l. c. 258; Benton v. Wickwire, 54 N. Y. 226.] The law does not favor the ouster of jurisdiction of courts after it has once attached. As stated in State v. McCord, supra, "the county court, having acquired jurisdiction of the subject-matter of controversy and of the petitioners, the validity of its proceedings thereafter with respect to the same matter is not subject to collateral attack, as is sought to be done in this case." When the jurisdiction of a court is exclusive and such jurisdiction had once lawfully attacked it cannot be ousted by subsequent events or facts arising in the case, but the court may proceed to final judgment unless some constitutional statute operates to divest that particular court of its jurisdiction. [11 Cyc. 690; State ex rel. Renick v. St. Louis County Court, 38 Mo. 402; Hardin v. Lee, 51 Mo. 241; Seibel v. Simeon, 62 Mo. 255; Shea v. Shea, 154 Mo. 599, 55 S. W. 869.]

The principles herein announced as to collateral attack apply to proceedings under the local option act; and the validity of a local option election is not subject to collateral attack. [People v. Hamilton, 58 N. Y. Supp. l. c. 962; State ex rel. Peacock v. Village Council of Osakis (Minn.) 128 N. W. 295, 297; Gieb v. State (Tex.) 21 S. W. 190; Janks v. State (Tex.) 15 S. W. 815; Anderson v. State (Tex.) 44 S. W. 824; Commonwealth v. Jones (Ky.) 84 S. W. 305; State v. McCord, supra; State ex rel. Ryan v. Wooten, 139 Mo. App. 221, 122 S. W. 1101.] As was stated in the Ryan case, in my judgment the law has given us its mandate to uphold and maintain, and not invalidate the expressed will of the electors of Newton county in the local option election.