STATE OF MISSOURI, Respondent, v. JOHN MILLS, Appellant.

Springfield Court of Appeals, January 8, 1912.

1. CRIMINAL LAW: Unlawfully Herding Cattle: Sufficiency of Evidence. In a prosecution of defendant on an information charging him with unlawfully driving cattle from one county to another for the purpose of herding and grazing them upon unimproved and unenclosed lands in the latter county, the evidence is examined and *held* sufficient to justify a conviction. *Held*, further, that the instructions given in the case were proper and amply sustained by the evidence.

2. STATUTES: Contruction. Courts in construing statutes cannot depart from their unambiguous language.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*George B. Wilson* and *Patterson & Patterson* for appellant.

*Fred W. Barrett* for respondent.

NIXON, P. J.—On May 17, 1910, before a justice of the peace within and for Christian county, the prosecuting attorney filed an information charging that on or about the first day of May, 1910, John Mills did then and there unlawfully, willfully, take and drive from one county to another in the state of Missouri, to-wit, from Douglas county, Missouri, to Christian county, Missouri, neat and horned cattle, to-wit, one hundred head of steers and ten head of cows, for the purpose of herding and grazing and causing the same to be herded and grazed upon the unimproved and uninclosed lands and premises of the said Christian county, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state. On June 13, 1910, upon trial before the justice, defendant was found guilty and his punishment assessed at a fine of $50. An appeal was perfected to the circuit court of Christian county and the case was tried at the August term, 1910, before a jury, resulting in a verdict of guilty and punishment assessed at a fine of $25. Defendant has appealed.

It was admitted upon the trial that the provisions of art. 5, chap. 6, R. S. 1909, restraining animals from running at large had never been adopted either in Douglas county or in Christian county.

This prosecution is under Sec. 794, R. S. 1909, which provides as follows: "It shall be unlawful for any person to take or drive from any one county to another in this state, or from one range to another in the same county, any neat or horned cattle, mules, horses or sheep, for the purpose of herding or grazing, or causing the same to be herded or grazed, upon

any of the unimproved or uninclosed lands or premises in this state. Any person violating any of the provisions of this section shall, upon conviction thereof, be punished by a fine not exceeding two hundred dollars.'' Sec. 796 in the same article and chapter is in part as follows: ''Provided, that the provisions of this article shall not be so construed as to prevent any . . . resident of this state who resides in any county which has not adopted the provisions of article V, chapter 6, Revised Statutes of 1909, from *allowing* his cattle *to go at large* on the range of the locality where he resides.''

The greater part of the evidence in the record concerns some seventy or eighty head of cattle belonging to defendant which were seen on the range in Christian county some six miles from where the defendant resided during the spring and summer of 1910. The evidence showed that defendant's home was at his mother's farm, the west boundary of which was on the Christian and Douglas county line, the dwelling-house being about one-half mile east of the west line of Douglas county and the east line of Christian county. The evidence showed that within three or four miles of defendant's home there was a range of wild, unimproved and uninclosed lands, that was used by the residents of that locality as grazing · ground for their stock and cattle, and that this range extended over territory covering a space of six or seven miles, and that about three or four miles of said range was in Christian county and the balance of the same was in Douglas county. There was scarcely any range where defendant resided, and what little there was consisted of pea grass which furnished some feed for cattle in the fall; and this was about all the range there was from defendant's residence west to the Christian county line. From the east line of Christian county west a distance of a mile the farms were few and the range consisting of wild grass was bet-

ter than that east of the Christian county line, the best range being about one and one-half miles from the east line of Christian county and extending west in Christian county a distance of six or seven miles. The testimony of all the witnesses except that of Perry Hurst was that they merely saw sixty or seventy of defendant's cattle on that range. The defendant testified that some seventy-five head of his cattle were fed on his mother's farm in Douglas county, and that later in the spring they were all on the range in Christian county. Perry Hurst stated that on April 10, 1910, he saw the defendant driving about fifty or sixty head of cattle toward the west in Christian county about four or five miles from the Douglas county line, and that defendant was driving them down the road that runs from Douglas county into Christian county, and the cattle were being driven from the direction of Douglas county. The witness was unable to state from what point the cattle had been driven but knew that they were being driven towards the good range in Christian county. He knew that defendant branded his cattle with a label in the ear and an "X" on the hip but he only saw at that time the label in the ear. He stated that he saw these cattle afterwards about a half a quarter on up the road on the range; that he went up there to salt his cattle and found them with defendant's; that defendant's cattle remained there from that time until the time of the trial. On cross-examination he stated that he didn't know where defendant left the cattle he saw him driving on April 10, 1910. It is apparent that this evidence is of a very unsatisfactory character.

However, in appellant's brief, we find the following statement: "Defendant admitted that he had taken three cows a distance of about one mile and a half from his home and turned them with the balance of his cattle on the range, claiming that he had the right under the law to turn his cattle upon the range

in the locality where he had resided for twenty years, even though the range happened to extend over the county line.'' We quote from the defendant's testimony: ''Q. Did you drive any cattle in this county at any time, and if so, tell the jury about it. A. Along about the first of June, I drove three cows; one I bought in Ozark county, and then one I bought at Ava, and one I bought from a widow a mile from me, and she had just bought it six or seven miles on further, and I drove them to the west side of my place and let the fence down and let them out, and these three cattle wanted to go the way I bought them and I drove them on the north side from the place I lived on, where the fence makes a corner, and drove them out of a gap and drove them about a mile and a half—I testified before that it was two miles, but I looked it up, and there is a map that shows the lines. Q. It is in the immediate locality of your home? A. Well, I don't know the definition of locality, but that is the place I drove them.'' *Cross-examination*: ''Q. You drove three cows from your place over in Christian county from Douglas county? A. Yes, sir. Q. And left them on the range for the purpose of getting the benefit of the range in Christian county? A. So I could catch them if they started back, and the second day they were at the gap I drove them from, and I drove them up there around the Martin place.'' And the evidence showed that the Martin place was in the southeastern part of Christian county a mile and a half or more from where defendant resided. The justice of the peace before whom the case was first tried testified that in the trial in his court the defendant made some admissions about driving cattle from Douglas county into Christian county; that defendant then admitted that he drove three cows from his home in Douglas county over into Christian county and put them with his other cattle in order to get them used to the other cattle so they would run with the other cattle and not go back

southeast where he bought them and that he drove them over into Christian county and gave them salt in order to get them to stay with the other cattle.

The defendant's own admission was sufficient to convict him before the jury. While he states that he drove the three cows over into Christian county to get them used to running with the other cattle, the evidence showed that the other cattle were over there for grazing, and the evidence was sufficient to put the responsibility for the verdict on the jury.

Sec. 796, R. S. 1909, provides that the provisions of the article shall not be so construed as to prevent any resident of this state who resides in any county which has not adopted the provisions of article V, chapter 6, Revised Statutes of 1909, from *allowing* his cattle *to go at large* on the range of the locality where he resides. Defendant did not stop at this; he drove them over into Christian county in express violation of Sec. 794, R. S. 1909. The trial court instructed the jury that the provisions of Art. V, Chap. 6, R. S. 1909, had never been adopted in either Douglas or Christian counties and told them that if they found and believed from the evidence that the defendant at the time of the alleged offense resided in the county of Douglas, then he had a perfect right under the law to turn this cattle upon the range of the locality where he resided, even though such range extended over into Christian county. Hence the defendant had the full benefit of this law. And in instruction No. 1 the court told the jury that if they found and believed from the evidence that John Mills in the county of Christian and state of Missouri at the time and place mentioned in the information, to-wit, May 17, 1910, willfully and unlawfully drove cattle from one county to another or from one range to another for the purpose of herding or grazing said cattle, on lands not his own, in said Christian county, they would find the

defendant guilty, etc. There was ample evidence to sustain this instruction.

It is quite unnecessary for us to add that the judiciary can only apply the well-recognized rules of construction in determining the meaning of a statute; and the departure from the language of an unambiguous statute is not justified by any rule of construction, and would be the exercise of legislative power. The responsibility for the wisdom and policy of legislation rests with the Legislature alone. [Henry & Coatsworth Co. v. Evans, 97 Mo. 47, 10 S. W. 868; St. Louis & I. M. Ry. Co. v. Clark, 53 Mo. 214.]

It follows from what has been said that the judgment should be affirmed and it is so ordered. All concur.